FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

SEP 22 2015

JAMES N. HATTEN, Clerk
By_____ Deputy Clerk



# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Ex. Rel.* TRACY PAYTON; | ) )<br>) |
| | ) |
| STATE OF GEORGIA,<br>*Ex. Rel.* TRACY PAYTON; | ) )<br>) |
| STATE OF CALIFORNIA,<br>*Ex. Rel.* TRACY PAYTON; | ) )<br>) |
| STATE OF COLORADO,<br>*Ex. Rel.* TRACY PAYTON; | ) )<br>) |
| STATE OF CONNECTICUT<br>*Ex. Rel.* TRACY PAYTON; | ) )<br>) |
| STATE OF FLORIDA,<br>*Ex. Rel.* TRACY PAYTON; | ) )<br>) |
| STATE OF ILLINOIS,<br>*Ex. Rel.* TRACY PAYTON; | ) )<br>) |
| STATE OF LOUISIANA,<br>*Ex. Rel.* TRACY PAYTON; | ) )<br>) |
| STATE OF MASSACHUSETTS,<br>*Ex. Rel.* TRACY PAYTON; | ) )<br>) |
| STATE OF NEW JERSEY,<br>*Ex. Rel.* TRACY PAYTON; | ) )<br>) |
| STATE OF NEW YORK,<br>*Ex. Rel.* TRACY PAYTON; | ) )<br>) |
| STATE OF NORTH CAROLINA, | ) |

Civil Action No. CV_____

**1: 15 - CV - 3324**

**FILED *IN CAMERA*
AND UNDER SEAL**

**COMPLAINT FOR VIOLATION
OF FEDERAL FALSE CLAIMS
ACT, 31 U.S.C. § 3729 *et seq.***

**JURY TRIAL DEMANDED**

*Ex. Rel.* TRACY PAYTON;                    )
                                            )
STATE OF TEXAS,                             )
*Ex. Rel.* TRACY PAYTON;                    )
                                            )
STATE OF VIRGINIA,                          )
*Ex. Rel.* TRACY PAYTON;                    )
                                            )
STATE OF WASHINGTON,                        )
*Ex. Rel.* TRACY PAYTON;                    )
                                            )
    Plaintiffs –Relator(s),         )
                                            )
v.                                          )
                                            )
PEDIATRIC SERVICES OF                       )
AMERICA, INC., A DELAWARE                   )
CORPORATION, PEDIATRIC                      )
SERVICES OF AMERICA, A                      )
GEORGIA CORPORATION,                        )
PEDIATRIC HEALTHCARE,                       )
INC., PEDIATRIC HOME                        )
NURSING SERVICES,                           )
COLLECTIVELY d/b/a PSA                      )
HEALTHCARE, PEDIATRIC                       )
SERVICES HOLDING                            )
CORPORATION, PORTFOLIO                      )
LOGIC, LLC AND J.H.WHITNEY                  )
CAPITAL PARTNERS, LLC                       )
                                            )
    Defendants.                     )

## FILED IN CAMERA AND UNDER SEAL

2

COMES NOW Plaintiff, United States of America *ex rel.* Tracy Payton, by and through undersigned counsel, as follows:

## I. INTRODUCTION

1.     This is an action to recover damages and civil penalties on behalf of the United States of America, the States of Georgia, California, Colorado, Connecticut, Florida, Illinois, Louisiana, Massachusetts, New Jersey, New York, North Carolina, Texas, Virginia and Washington arising from various false and fraudulent statements, records, and claims made and caused to be made by the Defendants and/or their agents and employees including, but not limited to, failing to make the required supervisory nursing visits, failing to make and retain required nurses plan of care, treatment and observation notes and signatures and other required clinical records in the patients files, withholding of overpayments and credit balances, unlawful rounding of nurses charges, billing Medicare for denials only when not credentialed for Medicaid and then billing Medicaid for payment in full all of the foregoing, in violation of a Corporate Integrity Agreement, dated as of August 2015 by and among certain Defendants (the CIA"), the Federal False Claims Act, 31 U.S.C. § 3279 *et seq.* ("the FCA" or "the Act"), the Georgia False Medicaid Claims Act (Georgia Code § 49-4-168.1, *et seq.*), the California False Claims Act (Gov. Code § 12650, *et seq.*), the Colorado Medicaid False Claims Act

3

(Colo. Rev. State. 25.5-4-303.5, *et seq*.), the Connecticut False Claims Act for Medicaid Assistance Programs (Conn. Gen. Stat. § 17b-301(a), *et seq*.), the Florida False Claims Act (Fla. Stat. Ann § 68.081, *et seq*.), the Illinois Whistleblower Reward and Protection Act (740 ILCS 175/1, *et seq*.), the Louisiana Medical Assistance Programs Integrity Law (LSA R.S. 46.437.1, *et seq*.), the Massachusetts False Claims Act (Mass. Gen. Laws § 5A, *et seq*.), the New Jersey False Claims Act (NJ ST. 2A:32C-1, *et seq*.), the New York False Claims Act (NY STATE FIN § 187, *et seq*.), the North Carolina False Claims Act, Code Section N.C.G.S.A. § 108A-70-10, *et seq*.), Texas Medicaid Fraud Prevention Act (TEX. HUM. RES. Code § 36.001, *et seq*.), Tex. Gov't Code Ann. § 531.101, *et seq*., Virginia Fraud Against Taxpayers Act (VA CODE § 8.01 – 216.3), and Washington State Medicaid Fraud False Claims Act (RCW 77.66.005, *et seq*.) (collectively, the "State Acts"), and

2.      The *qui tam* case is brought against Defendants for knowingly defrauding and conspiring to defraud, the federal Government and various states, including but not limited to Georgia, California, Colorado, Connecticut, Florida, Illinois, Louisiana, Massachusetts, New Jersey, New York, North Carolina, Texas, Virginia and Washington in connection with the Medicare, Medicaid and other federal health care programs.

4

3.     PSA is the leading provider of home healthcare and related services for mentally fragile and chronically ill infants and children and is the nation's largest focused pediatric home healthcare provider. PSA has well over 50 branch offices, including satellite offices and new branch offices, located in at least 17 states[1] through at least two reportable segments (i) Pediatric and Adult Private Duty Nursing ("PDM") and (ii) Prescribed Pediatric Extended Care ("PPEC"). According to its website www.psahealthcare.com, (4/27/2013) PSA has office locations in Atlanta, Columbus, Augusta, Macon and Savannah.

4.     Based on information published on its bulletin board at its Peachtree Corners Office, PSA collects between $5-6 million per week (over $300 million annually).  PSA was a public company registered with the U.S. Securities & Exchange Commission and traded on the NASDAQ stock market (NASDAQ PSAI) until it was acquired in 2007 for approximately $111 million in a going private transaction by Portfolio Logic LLC and its controlled subsidiary, Pointer Acquisition Co., Inc.

5.     The Relator, Tracy Payton, was only recently hired in August 2015 through a temp employment agency as a billings specialist in charge of the State of

---

[1] California, Colorado, Connecticut, Florida, Georgia, Illinois, Louisiana, Massachusetts, New Jersey, New York, North Carolina, Oregon, Pennsylvania, South Carolina, Texas, Virginia and Washington.

5

Georgia, and was quickly promoted to all States as a high dollar collector and reporting to Samuel Blackman, Team Lead and Merab Carty, Manager of PSA's Business Office. The Relator has over 18 years of experience in the healthcare industry with billing and collections for hospitals and private medical practices.

6. The FCA was originally enacted in 1863, and was substantially amended in 1986 by the False Claims Amendments Act, Pub. L. 99-562, 100 Stat. 3153. Congress enacted the 1986 amendments to enhance and modernize the Government's tools for recovering losses sustained by frauds against it after finding that the federal program fraud was pervasive. The amendments were intended to create incentives for individuals with knowledge of Government frauds to disclose the information without fear of reprisals or Government inaction, and to encourage the private bar to commit resources to prosecuting fraud on the Government's behalf.

7. The amended Act provides that any person who presents, or causes to be presented, false or fraudulent claims for payment or approval to the United States Government, or knowingly makes, uses, or causes to be made or used false records and statements to induce the Government to pay or approve false and fraudulent claims, is liable for a civil penalty ranging from $5,500 up to $11,000

6

for each such claim, plus three times the amount of the damages sustained by the federal Government.

8.     The Act allows any person having information about false or fraudulent claims to bring an action for himself and the Government, and to share in any recovery.  The Act requires that the complaint be filed under seal for a minimum of 60 days (without service on the defendant during that time).

9.     The FCA was recently amended again by the Fraud Enforcement and Recovery Act of 2009, ("FERA"), Public Law 111-21, which President Obama signed into law on May 20, 2009.  FERA further expanded the scope of the FCA to ensure that the government can recover taxpayer dollars purportedly lost to fraud and abuse.  FERA expanded the FCA, with the intent to eliminate many defense arguments, and to reverse a Supreme Court decision regarding subcontractors.  *See* S. Rep. 111-10, 11th Cong. 1st Sess. 10-13 (March 23, 2009).

10.     FERA now makes it illegal to knowingly conceal or knowingly and improperly avoid or decrease an obligation to pay or transmit money or property to the Government.  An "obligation" is now defined to include, "the retention of an overpayment."  31 U.S.C. § 3729(b)(3).  Under the FCA, an act of "concealment" can also be a felony.  In addition, the duty to disclose provisions of the 1977 amendments to the Social Security Act 42 U.S.C. § 1320a-7(b)(a)(3) makes

7

concealing from the Government or failing to report Medicare overpayments a felony. Under the "duty to disclose provision" Healthcare providers and others who conceal or fail to disclose that they have received larger payments than they are entitled to be guilty of a felony and could be imprisoned for up to five years and fined up to $25,000. Their employees, including auditors, who conceal these overpayments, may also be guilty of at least a misdemeanor and subjected to fines.

11. On March 23, 2010, the Patient Protection and Affordable Care Act (Pub. L. 111-148) was enacted. The Health Care Education Reconciliation Act of 2010 (Pub. L. 111-152) then amended certain provisions of Public Law 111-148. These public laws are collectively known as the Affordable Care Act. The Affordable Care Act makes a number of changes to the Medicare program that enhance the Government's efforts to recover overpayments and combat fraud, waste and abuse in the Medicare program.

12. Section 6402(a) of the Affordable Care Act established a new section 1128J(d) of the Act entitled "Reporting and Returning of Overpayments." Section 1128J(d)(1) of the Act requires a person who has received an overpayment to report and return the overpayment to the Secretary, the State, an intermediary, a carrier, or a contractor, as appropriate, at the correct address, and to notify the Secretary, State, intermediary, carrier or contractor to whom the overpayment was

returned in writing of the reason for the overpayment. Section 1128J(d)(2) of the Act requires that an overpayment be reported and returned by the later of— (1) the date which is 60 days after the date on which the overpayment was identified; or (2) the date any corresponding cost report is due, if applicable. Section 1128J(d)(3) of the Act specifies that any overpayment retained by a person after the deadline for reporting and returning an overpayment is an obligation (as defined in 31 U.S.C. 3729(b)(3)) for purposes of 31 U.S.C. 3729.

13.     Section 1128J(d)(4)(A) defines "knowing" and "knowingly" as those terms are defined in 31 U.S.C. 3729(b); the terms "knowing" and "knowingly" "mean that a person with respect to information—(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." There need not be "proof of specific intent to defraud." Section 1128J(d)(4)(B) of the Act defines the term "overpayment" as any funds that a person receives or retains under title XVIII or XIX to which the person, after applicable reconciliation, is not entitled under such title. Finally, section 1128J(d)(4)(C) of the Act defines the term "person" as a provider of services, supplier, Medicaid managed care organization ("MCO") (as defined in section 1903(m)(1)(A) of the Act), Medicare Advantage organization ("MAO") (as

9

defined in section 1859(a)(1) of the Act) or PDP sponsor ("PDP") (as defined in section 1860D-41(a)(13) of the Act) but the definition does not include a beneficiary. [See *Federal Register* Vol. 77 No. 32, February 16, 2012]. Violations, among other things, of Section 6402(a), of the Affordable Care Act are *per se* violations of the False Claims Act.

14.     The Centers for Medicare & Medicaid Services ("CMS") (f/k/a the Health Care Financing Administration ("HCFA")) has also taken steps in the government's comprehensive efforts to identify improper Medicare payments, fight fraud, waste and abuse in the Medicare program. In February 2012, pursuant to the Affordable Care Act, CMS proposed that overpayments must be reported and returned if the overpayment is identified within 10 years of the date the overpayment was received. As described in the proposed rules, CMS selected the 10 year look back period because, among other things, "this is the outer limits of the False Claims Act Statute of limitations [See *Federal Register* Vol. 77 No. 32, February 16, 2012 at page 6].

15.     In the Tax Relief and Health Care Act of 2006, Congress required a permanent and national RAC program to be in place by January 1, 2010. The national RAC program is the outgrowth of a successful demonstration program that used RACs to identify Medicare overpayments and underpayments to health care

providers and suppliers.   The demonstration resulted in over $900 million in overpayments being returned to the Medicare Trust Fund between 2005 and 2008 and nearly $38 million in underpayments returned to health care providers.

16.   The goal of the recovery audit program is to identify improper payments made on claims of health care services to Medicare beneficiaries. Improper payments may be overpayments or underpayments.   Overpayments can occur when healthcare providers submit claims that do not meet Medicare's coding or medical necessity policies.

17.   As will be set forth below in detail, within only a few days of commencing her employment, it became clear to Relator that PSA patients medical records and visits were seriously deficient, that PSA was engaging in a number of illegal billing practices and that a large number of very critically ill patients were not being seen periodically by the required nursing supervisor and that PSA was illegally holding and not timely refunding overpayment and credit balances to various government payors.   Within days she brought a number of these issue to her immediate Team Lead Samuel Blackman, Manager Merab Carty, and Vice President Debbie Lewis of the Georgia Region and was told by her Team Lead that the PSA way over ruled the Georgia Medicaid rules and regulations outlined on the Georgia Medicaid portal. He also told her that the Medicare rejections were what

11

they had been using in the past as denials from Medicare to get claims paid by Medicaid. A few days later, Tracy was called into a meeting with her Team Lead, and the Vice President over the Georgia region and she clearly outlined the concerns relating to the unethical billing practice, and shared the proper forms and manuals to become compliant with the Georgia Medicaid program. During this meeting, Debbie Lewis advised that PSA did once upon time use the forms from the Georgia Medicaid portal, but PSA's process had gotten extremely strict, and PSA did not use these forms anymore. At the end of the meeting, Debbie Lewis cautioned Relator about her usage of the word "fraud". After this episode, Relator asked to be transferred and to no longer be involved in this practice. Relator was then transferred to the position of a "high dollar" collector in all states and was given access to billing and treatment records for patients in all States.

18. Form CMS-838 also states "you are responsible for reporting and repaying all improper and excess payments you have received from the time you began participating in the Medicare program." A similar report called a Credit Balance Report Form is used for Medicaid overpayments in various states including Georgia. Each of these forms requires the representative to certify that the "information is complete and accurately reflects the provider's credit balance obligation to Medicaid". See for example, Part I Policies and Procedures for

12

Medicaid/PeachCare for Kids, Georgia Department of Community Health Division of Medicaid, Revised: October 1, 2011.

19.     CMS requires Medicare providers to submit Form CMS-838 within 30 days after the close of the calendar quarter, and include all Medicare credit balances shown in the providers accounting records as of the last day of the reporting quarter. Providers must pay all amounts owed at the time the credit balance report is submitted.

20.     During her employment at PSA, the Relator discovered numerous other billing irregularities. She attempted on various occasions to address these issues with her supervisors, knowing that she was required by law, (and by PSA's own internal policies which are clearly posed on its internal "Wiki.intranet" pages) to report any violations of which she is aware. In retaliation for her conduct, Relator was told by her Manager Merab Carty of PSA's Business Office to "lay low", and "not say or do anything else in reference to the billing errors" to intimidate her, stop her probing of compliance violations and to have her fear for her job.

21.     Based on the above described provisions, *qui tam* Plaintiff and Relator Payton seeks through this action to recover all available damages, civil penalties, and other relief for state and federal violations alleged herein.

13

22.     Although the precise amount of the loss to the federal and state Governments cannot presently be determined, it is estimated that the damages and civil penalties that may be assessed against the Defendants under the facts alleged in this Complaint amounts to tens of millions of dollars.

## II. PARTIES, JURISDICTION AND VENUE

23.     Plaintiff/Relator Payton is a resident of Rex, Georgia.   Relator, a mother of 4, has an associate degree in Healthcare Management from University of Phoenix Online and has been working in billing and collections in the healthcare industry for approximately 18 years.

24.     Defendant Pediatric Services of America, Inc., is a Georgia corporation with a principal address at Six Concourse Parkway, Atlanta, Georgia 30328.  PSA uses the trade name PSA Healthcare.

25.     Defendant PSA is a Delaware corporation with a principal office address at Six Concourse Parkway, Atlanta, Georgia  30328.  PSA uses the trade name PSA Healthcare.

26.     Defendant Pediatric Healthcare, Inc. is a Georgia corporation with a registered office at Six Concourse Parkway, Suite 1100, Atlanta, Georgia  30328.

27.     Defendant Portfolio Logic, LLC, a Delaware limited liability company, based on information and belief (based on the Schedule 13E-3 filing

14

with the SEC on July 3, 2007), wholly owns and controls PSA as a result of a going private transaction for an aggregate transaction value of approximately $111 million. According to Form 13D statement of beneficial ownership filing by it the SEC, Defendant Portfolio Logic, LLC has owned a controlling position of at least 10% of PSA since December 2005.

28. Defendant Pediatric Services Holding Corporation ("PSHC"), is a Delaware corporation with a registered agent of The Corporation Trust Company in Delaware.

29. On information and belief Defendant, J.H. Whitney Capital Partners, LLC ("J.H. Whitney") is a Delaware limited liability company, with a registered agent of United Corporate Services, Inc. in Delaware. J.H. Whitney acquired PHHC as a portfolio company on or about March 23, 2015 with the use of leverage debt financing (see http://www.prweb.com/releases/2015/03/prweb12600166.htm).

30. This is a civil action arising under the laws of the United States against the Defendants to redress violations of 31 U.S.C. §§ 3729-3730. This court has jurisdiction over the subject matter of this action: (i) pursuant to 31 U.S.C. § 3732, which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§ 3729 and 3730; (ii) pursuant to 28 U.S.C. § 1331, which

confers federal subject matter jurisdiction; and (iii) pursuant to 28 U.S.C. § 1345 because the United States is a Plaintiff.

31.   This civil action is also brought on behalf of the States of Georgia, California, Colorado, Connecticut, Florida, Illinois, Louisiana, Massachusetts, New Jersey, New York, North Carolina, Texas, Virginia and Washington against the Defendants to redress violations ad recover damages and civil penalties as allowed under the False Claims Acts of these States.

32.   This suit is not based upon prior public disclosures of allegations or transactions in a criminal, civil or administrative hearing, lawsuit or investigation or in a Government Accounting Office or Auditor General's report, hearing, audit, or investigation or from the news media.

33.   To the extent that there has been a public disclosure unknown to Relator, she is the original source under 31 U.S.C. § 3730(e)(4) and the relevant state whistleblower statutes.   She has direct and independent knowledge of the information on which the allegations are based.

34.   This Court has jurisdiction over Defendants under 31 U.S.C. § 3732(a) because PSA can be found in, is authorized to transact business in, and is now transacting business in this District.   In addition, acts proscribed by 31 U.S.C. § 3729 have occurred in this District.

35.     Venue is proper in this District because Defendants conduct business
in this District and, upon information and belief, acts giving rise to this action
occurred within this District.

## III.  RELEVANT LAW

### A.     The Medicare and Medicaid Programs.

#### 1.     Medicare

36.     In 1965, Congress enacted Title XVIII of the Social Security Act,
known as the Medicare program.  Medicare is a federally-funded health insurance
program primarily benefiting the elderly.  Entitlement to Medicare is based on age,
disability or affliction with end stage renal disease.  *See* 42 U.S.C. § 426, *et seq.*
Part A of the Medicare Program, the Basic Plan of Hospital Insurance, authorizes
payment for institutional care, including hospital services and post-hospital nursing
facility care.  *See* 42 U.S.C. §§ 1395c-1395i-4.

37.     Part B of the Medicare Program, the Voluntary Supplemental
Insurance Plan, covers the cost of services performed by physicians and certain
other health care providers, both inpatient and outpatient, if the services are
medically necessary and directly and personally provided by the provider.
Medicare pays providers only for services that it considers "reasonable and

17

necessary for the diagnosis or treatment of illness or injury…." Social Security Act § 1862(a)(1)(A).

38.    Providers who wish to participate in the Medicare program must ensure, among other things, that their services are provided "economically and only when, and to the extent, medically necessary." 42 U.S.C. § 1320c-5(a).

39.    The Medicare program is administered through the Department of Health and Human Services, Centers for Medicare and Medicaid Services ("CMS").

40.    To assist in the administration of Medicare Part A, CMS contracts with "fiscal intermediaries." 42 U.S.C. § 1395h. Fiscal intermediaries, typically insurance companies, are responsible for processing and paying claims and auditing cost reports.

41.    Under Medicare Part A, CMS makes payments retrospectively to hospitals for inpatient services. Medicare enters into provider agreements with providers to establish the provider's eligibility to participate in the Medicare program. Regulations for Medicare reimbursement include an annual review of healthcare operations and provide criteria for coverage and reimbursement. ***On information and belief, PSA is Medicare certified as a Part A provider only but***

18

*Relator has discovered that PSA is billing Medicare for Part B services but are*
*providing services that fall under Medicare Part B.*

42.     As a prerequisite to payment for Medicare, CMS requires home health

agencies to submit annually a Form CMS-1728 (previously Form HCFA-1728),

more commonly known as the Cost Report.  Cost Reports are the final claim that a

provider submits to the fiscal intermediary for items and services rendered to

Medicare beneficiaries.

43.     Home Health Agency Cost Report contains a "Certification" that must

be signed by an officer or director of the Home Health Agency as follows:

> Sections 1877(a) and 1901(a)(1) of the Social Security Act state that,
> "Whoever knowingly and willfully makes or causes to be made any
> false statement or representation of material fact in any application for
> any benefit or payment under this title–shall (i) in the case of such a
> statement, representation, concealment, failure or conversion by any
> person in connection with the furnishing (by that person) of items or
> services for which payment is or may be made under this title, be
> guilty of a felony and upon conviction thereof fined not more than
> $25,000 or imprisoned for not more than 5 years, or both, or (ii) in the
> case of such statement, representation, concealment, failure or
> conversion by any other person, be guilty of a misdemeanor and upon
> conviction thereof fined not more than $10,000 or imprisoned for not
> more than 1 year or both."

44.     A home health care agency is required to disclose all errors and

omission in its claim for Medicare reimbursement (including its cost reports) to its

19

fiscal intermediary.   42 U.S.C. § 1320a-7b(a)(3) specifically creates a duty to

disclose known errors in cost reports.

> Whosoever . . . having knowledge of the occurrence of any event affecting (A) his initial or continued right to any such benefit or payment . . . conceals or fails to disclose such event with an intent fraudulently to secure such benefit or payment either in a greater amount or quantity than is due or when no such payment or benefit is authorized . . . shall in the case of such a . . . concealment or failure . . . be guilty of a felony.

> The Medicare Secondary Payer (MSP) Manual (Rev. 87, 08-03-12) (www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/ downloads/msp105c03.pdf) regulations at 42 CFR 489.20 require providers to pay Medicare within 60 days from the date a payment is received from another payer (primary to Medicare) for the same service for which Medicare paid.  A provider refunds the Medicare payment within 60 days by submitted an adjustment bill or via the Medicare Credit Balance Report.  The MSP regulations at 42 CFR 411.24(h) and 411.25 require all entities that receive a primary payment from both Medicare and a primary plan to repay Medicare. A physician or other supplier submits a refund check to Medicare. This refund is due Medicare, regardless of which payment the provider, physician, or other supplier received first and even if the insurance payment was refunded to the beneficiary or the insurer.

> Providers report credit balances resulting from MSP payments on the Form CMS-838 if the overpayment has not been repaid by the last day of the reporting quarter.  If the provider identifies and repays an MSP credit balance within a reporting quarter, in accordance with the 60-day requirement, it is not reported on the Form CMS-838, i.e., once payment is made, a credit balance would no longer be reflected in the provider records.

> If an MSP credit balance occurs late in a report quarter, and the Form CMS-838 is due prior to expiration of the 60-day requirement, the overpayment must be included in the credit balance report.  However,

payment of the credit balance does not have to be made at the time the
Form CMS-838 is submitted, but within the 60 days allowed.

45.     Under Medicare Part B, "Medicare carriers" are responsible for
accepting and paying claims for certain reimbursements under Medicare Part B.

46.     In addition, each provider must sign a provider agreement as a
condition of participation that agrees to comply with all Medicare requirements
including the fraud and abuse provisions. A provider who fails to comply with
these statutes and regulations is not entitled to payment for services rendered to
Medicare patients. By submitting a claim for Medicare reimbursement, the
provider certifies that the submitted claim is eligible for Medicare reimbursement
and that the provider is in compliance with all Medicare requirements.

47.     Medicare beneficiaries receiving home health care may also be
eligible for Medicaid, depending on their financial resources or disability status.
Some Medicaid programs have been known to employ "Medicare Maximization"
to shift dollars from Medicaid to Medicare.

48.     Recent investigations and prior Office of Inspector General Studies
have found that home healthcare services from home healthcare agencies ("HHA")
are vulnerable to fraud, waste and abuse. (See Department of Health and Human
Services, Office of Inspector General "Inappropriate and Questionable Billing by
Medicare Home Health Agencies" (August 2012) OEI-04-11-00240).

21

## 2.   Medicaid/Tricare/Champus/Indian Health Services

49.   Medicaid was also created in 1965 under Title XIX of the Social Security Act.  Funding for Medicaid is shared between the Federal Government and those states participating in the program.  Thus, under Title XIX of the Social Security Act ("Medicaid"), 42 U.S.C. § 1396 *et seq.*, federal money is distributed to the states, which in turn provide certain medical services to the poor.  Federal Medicaid regulations require each state to designate a single state agency responsible for the Medicaid program.  The agency must create and implement a "plan for medical assistance" that is consistent with the Title XIX and with the regulations of the Secretary of the United States Department of Health and Human Services (the "Secretary").  After the Secretary approves the plan submitted by the State, the state is entitled each quarter to be reimbursed for a percentage of its expenditures made in providing specific types of "medical assistance" under the plan.  42 U.S.C. § 1396(a)(1).  This reimbursement is called "federal financial participation" ("FFP").

50.   All Medicaid State plans must cover a certain set of basic benefits ("mandatory benefits").  These benefits include but are not limited to inpatient and outpatient hospital services; rural health online services; federally qualified health

22

center services; laboratory and x-ray services; physician services and certain home health care benefits.

51.     Each state's Medicaid program must cover certain home healthcare benefits.

52.     In Georgia for example, the Georgia Department of Community Health, Division of Medicaid/PeachCare for Kids Program (See Part I Policies and Procedures for Medicaid/PeachCare for Kids).  Section 3.034 of the Part I – Policies and Procedures Manual prohibits a provider from filing claims under Medicaid when it learns that a third party might be responsible or for example filing claims with Medicaid and subsequently billing the third party carrier.  Home Health Agencies such as PSA are also required to file Medicaid Credit Balance Report Forms due to an outstanding overpayment or credit balance.  In addition, as a condition to participation in the Medicaid program, providers are required to certify in Georgia for example as follows (APPENDIX L Billing Manual, Attestation of Compliance) as follows:

> I hereby attest that, as a condition for the above-identified Covered Entity to receive payments under the Georgia Medicaid/PeachCare for Kids Program, I have read Section 6032 if the Deficit Reduction Act of 2005 (the Act) and confirm that:
>
> • The Covered Entity's policies and procedures contain detailed information about the Federal laws identified in Section 6032(A) and about Georgia's laws imposing civil or criminal

23

> penalties for false claims and statements, and about whistleblower protections under such laws as found in the Sate False Medicaid Claims Act, Article 7B of Chapter 4 of Title 49 of the Official Code of Georgia; and
>
> - The Covered Entity's written policies and procedures also contain detailed information regarding its own policies and procedures to detect and prevent fraud, waste and abuse in Federal health care programs, including the Medicare and Medicaid Programs; and
>
> - The Covered Entity provides copies of its written policies to its employees (including management), and to any of its contractors and agents that perform billing or coding functions for the Covered Entity, or that furnish or authorize the furnishing of Medicaid health care items or services on behalf of the Covered Entity, or that are involved in monitoring of health care provided by the Covered Entity; and
>
> - The Covered Entity's written policies and procedures are included in any employee handbook maintained by the Covered Entity.

I also confirm that the Covered Entity includes the Georgia Medicaid/PeachCare for Kids providers identified on Attachment A.

53.    Most states have adopted similar certification as a result of that Deficient Reduction Act of 2005.

54.    Each home healthcare agency that participates in the Medicaid program must sign a Medicaid provider agreement with his or her state. Although there are variations in the agreements among the states, all states require the prospective Medicaid provider to agree that he/she will comply with all Medicaid requirements, including the fraud and abuse provisions.

24

55.     Tricare/Champus, administered by the United States Department of Defense, is a health care program for individuals and dependents affiliated with the armed forces.  The Federal Employee Health Benefit Program, administered by the United States Office of Personnel Management, provides health insurance for federal employees, retirees, and survivors.  10 U.S.C. §§ 1971-1104; 32 C.F.R. § 1999.4(a).

56.     Indian Health Services ("IHS"), a division of the Department of Health and Human Services, is the Federal Health Program for American Indians and Alaska Natives.  The Indian Health Care Improvement Act of 1976 allows IHS to bill for medical services provided by IHS facilities to Indians eligible for Medicare and Medicaid.

57.     In various states Medicaid programs, including the state of Georgia, since 2000, home health agencies are required to file electronic cost reports.  (See 42 C.F.R. Part 413.24(f)(4)) (Home Health Cost Data Form) which includes information and certifications of CMS Form 1728 previously described herein (see www.dch.georgia.gov/home-health).

58.     In various states' Medicaid programs, home health agencies and other providers, are required by virtue of state law and Provider Agreements to promptly return overpayments as soon as it is discovered or reasonably should have been or

25

similar language. (See for example New York, Florida and Texas provider agreements.)

59. Many State Medicaid laws such as Georgia, California, New Jersey, and Virginia require that registered nurses conduct supervisory visits at least every 30 days. Louisiana requires registered nurses supervisory nurse visits every 6 months. Pennsylvania, Colorado, and Louisiana requires that a registered nurse provides supervisory visits for certified home health aides every 14 days. Texas requires supervisory visit every 60 days by a registered nurse when services rendered by a certified home health aide.

https://www.colorado.gov/pacific/sites/default/files/HOME%20HEALTH%20SER VICES.pdf;

http://www.leg.state.fl.us/Statutes/index.cfm?App_mode=Display_Statute&Search _String=&URL=0400-0499/0400/Sections/0400.487.html;

https://www.mmis.georgia.gov/portal/Portals/0/StaticContent/Public/ALL/HAND BOOKS/GAPP%20IHSN%20Manual%2001-07-2015%20152855.pdf;

http://www.lamedicaid.com/provweb1/Providermanuals/manuals/HH/HH.pdf;

http://nj.gov/humanservices/dmahs/info/resources/manuals/10-60_Manual.pdf;

https://www.emedny.org/ProviderManuals/HomeHealth/PDFS/HomeHealth_Polic y_Guidelines.pdf;

http://www.pacode.com/secure/data/028/chapter601/chap601toc.html;

https://www.scdhhs.gov/internet/pdf/manuals/HOME%20HEALTH/Section%202. pdf;

http://www.tmhp.com/tmppm/tmppm_living_manual_current/Vol2_Nursing_and_Therapy_Services_Handbook.pdf;

https://www.ecm.virginiamedicaid.dmas.virginia.gov/WorkplaceXT/getContent?vsId={61C26291-2C03-49C1-AF20-52AE5C61AA3A}&impersonate=true&objectType=document&id={0F9E4FD0-4A5B-4232-AD7B-32D7974A0592}&objectStoreName=VAPRODOS1;

In addition, TRICARE ECHO Home Healthcare contracts with PSA, dated 2008 (available in PSA's Internal Wiki.intranet) requires that all home healthcare for home health aides and licensed practical nurses must be under the direct supervision of a registered nurse.

60. In August 2015, PSA entered into settlement agreements in connection with two previously filed and intervened federal and state false claims cases against PSA (the "Settlement Agreements") (see U.S. ex rel. Yvette Odumosu v. Pediatric Services of America Healthcare, No. 1:11-CV-1007-AT and United States ex rel. Sheila McCray, et al. v. Pediatric Services of America, Inc., Pediatric Services of America, Pediatric Healthcare, Inc.; Pediatric Home Nursing Services, collectively d/b/a PSA Healthcare; and Portfolio Logic, LLC, Civil Action No. CV413-127) for the following "Covered Conduct":

- Between January 1, 2008 and July 31, 2011, PSA knowingly submitted claims for services rendered by licensed practical nurses (LPN's) under the Georgia Pediatric Program (GAPP) out of PSA's Norcross and Savannah locations that were not reimbursable under the Georgia Medicaid program because of PSA's failure to document that

27

> it had conducted the monthly supervisory visits by a registered nurse (RN) as required by GAPP;
>
> - PSA knowingly failed to return overpayments that it received from federally-insured health programs, including TRICARE/TriWest and the state Medicaid programs of Arkansas, California, Colorado, Connecticut, Florida, Georgia, Illinois, Indiana, Louisiana, Ohio, Massachusetts, New Jersey, New York, North Carolina, Oregon, Pennsylvania, South Carolina, Texas, Virginia and Washington between January 1, 2007 and June 30, 2013  on claims submitted by PSA to the federally-insured health programs;
>
> - Between January 1, 2008 and October 31, 2014, PSA's locations in California, Colorado, Connecticut, Florida, Georgia, Louisiana, North Carolina, New York, Pennsylvania, South Carolina, Texas and Virginia knowingly submitted claims to those states' Medicaid programs for services that overstated the length of time that the services were rendered due to the fact that PSA's payroll and billing systems double rounded minutes worked between 23 and 30 minutes;
>
> - Between January 1, 2008 and October 31, 2014, PSA' knowingly submitted claims to TRICARE/TriWest for services that overstated the length of time that the services were rendered due to the fact that PSA's payroll and billing systems double rounded minutes worked between 23 and 30 minutes.

61.    In connection with the Settlement Agreements, PSA and certain affiliates entered into a Corporate Integrity Agreement with the Office of the Inspector General for the Department of Health and Human Services ("HHS"), a copy of which is attached as Appendix "1" Since the execution of that CIA, PSA has created an ineffective Compliance Committee and compliance program and has flagrantly continued to disregard and give lip service to the terms of the CIA

and grossly violate the terms of the CIA and the "Covered Conduct" through certain specified time periods that it was charged with and settled in the false claims cases settlement agreements with the Department of Justice and many States in August 2015, including failure to promptly report and refund overpayments in violation of applicable law.

## IV. CONCEALING AND FAILURE TO PROMPTLY REPORT AND RETURN OVERPAYMENTS FROM NOVEMBER 1, 2014 AND UNAPPLIED CASH SINCE OCTOBER 12, 2005

62.    Relator quickly learned within days of her employment that within PSA's Encore computer system was nearly $552,349.31 of overpayments that should have been promptly refunded to the Government which had been sitting on the books for between 60 days and up to 255 days See A/R Report, dated September 2015, as shown on Exhibit "A"! In addition, Relator also discovered outside of the Encore system, more than $955,696.70 of unapplied cash has been sitting on a separate spreadsheet outside the Encore system in a file called "Unapplied Cash" and not returned to payors since October 12, 2005. See selected pages obtained from the 124 page Unapplied Cash Report, dated as of September 15, 2015 as shown on Exhibit "B". For the period of November 1, 2014 through September 15, 2015, there was approximately $623,204.73 of funds that should have been returned to payors. See Exhibit "C". Relator noticed that the greatest

29

number of these overpayments were from State Medicaid payors including CA, CO, CT, FL ,GA, IL, LA, MA, NJ, NY, NC, PA, SC, TX, VA, WA.

## V. CLAIM NO. 2- PSA failed to conduct supervisory visits in accordance with GA GAPP since August 2011 and various other State Medicaid programs since 2009.

63.     Relator also quickly learned within days of her employment that PSA was not complying with the requirements set forth in the GA Medicaid GAPP program as it relates to supervisory visit conducted by a registered nurses every 30 days.  See Exhibit "D" for a sample list of Georgia patients lacking the required supervisory visits!  In addition, Relator also discovered that PSA had not complied with Medicaid requirements for, among others, the States of California, New Jersey, Virginia, Louisiana, Pennsylvania, Colorado and Texas.  See Exhibit "E" for a sample list of patients in other States lacking the required supervisory visits as they relate to registered nurse supervisory visits for Licensed Practical Nurses and Certified Home Health Aides/CNA. Roughly 70-75% of the accounts the Realtor examined failed to have any supervisory visits.  Relator noticed that the states that lacked registered nurse supervisory visits for Medicaid patients included CA, CO, CT, FL, GA, IL, LA, MA, NJ, NY, NC, PA, SC, TX, VA, WA.  Relator also noticed on PSA's Wiki.intranet that PSA had listed certain requirements for

30

supervisory visits for a number of States described herein which PSA violated. See Exhibit "F".

## VI  CLAIM NO. 3- PSA Nurses Notes do not meet documentation requirements for CA, CO, CT, FL, GA, IL, LA, MA, NC, NJ, NY, PA, TX, VA, WA

64.     Relator quickly noticed within days of her employment that at least 40%-50% of the PSA nurses notes were incomplete lacking documentation of care and or treatment provided, and many were never signed hardcopy and or electronically.  See Exhibit "G" for the period January 2, 2009 through August 1, 2015 for sample representative patients in various states.  Roughly 40-50% of the accounts the Realtor examined failed to have all of the necessary information to qualify as a complete note for the periods of July through August 2015.

## VII.  CLAIM NO. 4 - PSA  Missing Notes for the following states CA, CO, CT, FL, GA, IL, LA, NC, NJ, NY, PA, TX, VA, WA from 01/01/2009 – 08/01/2015.

65.     Relator quickly noticed within days of her employment that PSA Encore Reports showed that a significant number of nurses' notes were missing. Roughly 40-45% of the accounts the Realtor examined has missing notes.  See summary snippets showing severity of missing notes.  The snippets also reveal the total number of pages of these deficiencies per PSA Office as shown on Exhibit "H" for sample representative patients in various states. MA, WA, FL, and TX are

31

the top states with missing notes. In accordance with each state notes must be conducted as part of the visit and must be maintained in the patient chart. The reports attached come directly from PSA system Encore/Shine.

66.    Relator noticed that the states that lacked registered nurse supervisory visits for Medicaid patients included CA, CO, CT, FL, GA, IL, LA, MA, NJ, NY, NC, PA, SC, TX, VA,WA.

## VIII.  CLAIM NO. 5 - Billing Medicare for Denial only & Billing Medicaid for payment in full CT, NJ, VA, PA, GA, TX, MA, CO

67.    Relator also quickly learned within days of her employment that PSA was not credentialed with Medicare Part B in any state, and only credentialed with Medicare Part A in the States of California, Colorado, Georgia, Louisiana, New Jersey, Pennsylvania, Texas, Virginia and Washington, and were billing Part A Medicare claims for denial only although the patient was eligible for Part A and Part B Medicare coverage.  Relator discovered the attached letter in the PSA Wiki.intranet dated March 19, 2014 where it was advised by CMS that PSA "did not have valid agreement to participate in the Medicare program".  See Exhibit "I". PSA can't bill for its services in Massachusetts, for example, since it's not credentialed for Part A or B.  Relator has observed over $11 million of such fraudulent claims and payments by PSA in Massachusetts since 2007.  However, in

32

PSA's Wiki.intranet, it clearly shows how it wants its staff to bill. The claims were electronically billed to Medicare on a UB04 form, and once they were rejected the rejection was printed and falsely used as a zero payment explanation of benefits and each claim was then falsely billed to Medicaid on a CMS 1500 form for payment in full as if Medicare actually considered the charges for payment rather than in reality rejecting it. See Exhibit "J" showing by way of example that Medicaid Massachusetts paid approximately $1,355,000 for one patient based on this fraudulent representation. By way of further example, Relator believe that over for a selected sampling of such false claims. Roughly 90-95% of the accounts the Realtor examined were fraudulently billed to Medicaid (showing the claim was denied) rather than an actual rejection from Medicare. On August 19, 2015 Relator confronted Team Lead Sam Blackman, PSA Vice President Debbie Lewis and her supervisor Merad Carty and advised them that they were falsely billing Medicare and State Medicaid. It was clear from this conversation that PSA was aware of this issue and fraudulent billing practice.

## IX. CLAIM NO. 6 - Billing Private Insurance for denial for one procedure code & billing Medicaid for payment in full for other procedure codes

68.     Relator discovered a very common practice of PSA that when PSA had patients with commercial insurance primary and Medicaid secondary, PSA

33

would attempt to obtain an authorization with the commercial insurance carrier for one service code that would that would be denied. Once the denial was obtained for that one code PSA then submitted other codes for payment in full to Medicaid. PSA did not obtain a denial from the primary insurance carrier for all codes they received payment from Medicaid. These procedure codes include 9123 for registered nurse visits and 9124 for **licensed practical nurse** visits and home healthcare coded T1000 and T1001. The States involved include NC, FL, CO, PA, TX, SC, GA. See Exhibit "K" for representative examples in the States of GA and IL.

## X. CLAIM NO. 7-CONTINUED ILLEGAL ROUNDING UP AND BILLING OF NURSE TIME IN CA, CO, CT, FL, GA, IL, LA, MA, NJ, NY, NC, PA, SC, TX, VA, WA FROM 02/2015 – 09/2015

69.     Relator discovered that PSA continues to round up the time it bills for providing home healthcare to patients in various states, including CA, CO, CT, FL, GA, IL, LA, MA, NJ, NY, NC, PA, SC, TX, VA, WA. See Exhibit "L" for sample representative patients in various States.

70.     IN ADDITION TO VIOLATING APPLICABLE LAW AND THE CIA, THE ABOVE CONDUCT ALSO VIOLATES OTHER PSA'S OWN INTERNAL POLICIES AND PROCEEDURES.

34

71.     All billing and collections for PSA offices was performed at PSA's Peachtree Corners, Georgia location and was done electronically.

72.     Relator realized that PSA was violating Federal and State law and the CIA by not promptly returning overpayments and violating its own policies and procedures on refunds which require refund and recoupment within 60 days of receipt. See Exhibit "M".

73.      PSA has a significant number of published Compliance Policies relating to assuring Compliance with all relevant Federal, State and local laws and regulations. The Compliance Policies were available on PSA's intranet.

74.     As stated in the "PSA Healthcare Compliance Program" memo, among other things. . .

(5)     The Company maintains an "open door" policy for reporting issues and concerns. . . . Lastly, in order to ensure open and candid reporting, the Company has formally established a Non-Retaliation policy which empowers workforce members to report voice allegations or concerns without fear of reprisal or retribution.

(7)     The Company has established formal processes to facilitate the appropriate response and correction of violations of law, regulation, policy, etc.  A formal protocol has been established for the investigation and resolution of compliance issues, including measures to prevent similar conduct.

Any supervisor who receives a complaint or report of misconduct concerning a potential compliance issue is required to promptly notify the CCO for investigation and follow up.

75. The PSA Compliance with Local, State and Federal Laws and Regulations stated:

All workforce members are expected to be familiar and comply with all clinical, legal, regulatory and ethical requirements that pertain to the performance of their assigned duties and responsibilities.

PSA maintains both an open door policy, as well as, a non-retaliation – intimidation policy to facility open and candid communications without fear of reprisal.

76. PSA' Suspected Fraudulent Documentation memo stated, among other things:

Federal and State False Claims acts prohibit the knowing and/or use of false or fraudulent claims, records or statements for the purpose of obtaining payment from any government funded program. These laws apply to Medicare and Medicaid program reimbursement . . . falsifying cost reports; . . . participating in kickbacks; and retaining overpayment for services or items.

A violation may result in civil, criminal and/or administrative penalties, including monetary penalties (treble damages), imprisonment, and exclusion from participation in federally funded programs such as Medicare and Medicaid, and loss of licensure status.

Any location manager who suspects that an employee . . . has submitted falsified documents with respect to the provision or billion ordered services shall immediately notify the Chief Compliance Officer and the VP of Business Operations of the potential wrongdoing.

77. This memo goes on to describe corrective action which was not to Relator's knowledge taken in this matter:

Upon completion of the investigation, or when facts support wrongdoing, the CCO will coordinate with the VP of People Services,

General Counsel, VP of Business Operations, Corporate Reimbursement Manager, etc. to determine the appropriate corrective action based on the facts and circumstances. This may include:

- Notifying the payor source of the issue and pending reimbursement, if applicable

- Contacting the appropriate regulatory and legal authorities.

Based on the circumstances, the CCO may also recommend "global" (e.g. policy revisions, training, other audits regarding similar scenarios, etc.) in order to prevent future similar occurrences.

78.    Exhibit "F" for PSA's compliance policy on supervisory and case management visits.

79.    Finally PSA's Compliance Corrective Action memo is most telling stating and incriminating in this case, among other things:

When a compliance investigation confirms that a violation of law, regulation or Company policy has occurred, the CCO has a responsibility to report such find and recommend appropriate corrective action. Depending on the circumstances, self-disclosure may also be required ("voluntarily" self-reporting matters of noncompliance). For example, the False Claims Act (FCA) and the Patient Protection and Affordable Care Act (PPACA) arguably create a duty to disclose a known false claim or overpayment. Self-disclosures are generally required to be filed within 60 days from the time that PSA became aware of the matter; however, to whom the disclosure should be made is very much a case-by-case determination.

The OIG's Compliance Program Guidance not only requires prompt and effective correction action specific to the violation (e.g., disciplinary action, reporting and refund, etc.), but also requires that reasonable steps be taken to prevent similar problems in the future. This type of corrective action is generally more global in nature and includes, but is not limited to:

- revising policies and procedures;

37

- altering existing operating processes;

- altering or enhancing internal controls;

- modifying or developing training programs;

- implementing a corporate communication plan to reinforce existing policies or changes.

- All workforce members are expected to be familiar and comply with all clinical, legal, regulatory and ethical requirements that pertain to the performance of their assigned duties and responsibilities.

80.     Had the schemes described herein including continuing to conceal and keep overpayments been known (i) to officials with the State Medicaid programs, all payments would have been terminated and no funds from Medicare or Medicaid would have been paid to PSA (ii) HHS would have suspended PSA from providing service to the Federal government and instituted action against PSA for violations of the CIA and (iii) DOJ would have taken action against PSA for breach of the Settlement Agreements and related agreements.

81.     In the alternative, PSA would never have been allowed to enter into contracts with Medicaid and Medicare, and none of the contracts between Medicare/Medicaid and PSA existing at the time that this scheme commenced would have been renewed.

82. The fraudulent schemes described in Paragraphs 1 – 81 of the Complaint continue unabated through the date hereof.

83. Defendants have engaged in a cover-up, have engaged in significant additional fraudulent conduct, and continue to submit false claims to the United States Government to hide their illegal and unlawful conduct, as described herein.

## COUNT I

Claim By and on Behalf of the United States under the False Claims Act Relating to Defendants' above-referenced conduct (Presenting False Claims)

84. Plaintiff realleges and incorporates by reference paragraph "1" through "83" as though fully set forth herein.

85. This is a claim on behalf of the United States under the False Claims Act, 31 U.S.C. §§ 3729-33, as amended.

86. The Plaintiff/Relator has standing to maintain this action by virtue of 31 U.S.C. § 3730(b).

87. By virtue of the acts described above and Defendants' deceptive and fraudulent actions, Defendants knowingly presented false or fraudulent claims for payment, or knowingly caused false or fraudulent claims for payment to be presented, to officials of the United States Government in violation of 31 U.S.C. § 3729(a)(1), as amended.

39

88. The false claims for payment presented or caused to be presented by Defendants include all claims for reimbursement from the Government since the inception of the scheme described herein.

89. By virtue of the false claims presented or caused to by Defendants, the United States has suffered actual damages and is entitled to recover three times the amount by which it is damages, plus civil money penalties of not less than $5,500 and not more than $11,000 for each of the false claims presented or caused to be presented, and other monetary relief as appropriate.

## COUNT II

Claim By and on Behalf of the United States under the False Claims Act Relating to Defendants' above-referenced conduct (False Records or Statements)

90. Plaintiff realleges and incorporates by reference paragraph "1" through "89" as though fully set forth herein.

91. This is a claim on behalf of the United States under the False Claims Act, 31 U.S.C. §§ 3729-33, as amended.

92. The Plaintiff/Relator has standing to maintain this action by virtue of 31 U.S.C. § 3730(b).

93. By virtue of the acts described above and Defendants' use of, or activities causing to be used, false records and statements to get false and

fraudulent claims paid and approved by the Government, Defendants caused to be made or used false records or statements to get false or fraudulent claims paid or approved by an agency of the United States Government, in violation of 31 U.S.C. § 3729(a)(2).

94.     By virtue of, and as a result of, the false records and statements used to get false claims paid by the Government, the United States has suffered actual damages and is entitled to recover three times the amount by which it is damaged, plus civil money penalties of not less than $5,000 and not more than $11,000 for each of the false claims presented or caused to be presented, and other monetary relief as appropriate.

## COUNT III

Claim By and on Behalf of the United States under the False Claims Act Relating to Defendants' above-referenced conduct (Presenting False Claims)

95.     Plaintiff realleges and incorporates by reference paragraph "1" through "94" as though fully set forth herein.

96.     This is a claim under the Georgia State False Medicaid Claims Act, Georgia Code § 49-4-168.1, *et seq*.

97.     The Plaintiff/Relator has standing to maintain this action by virtue of the Georgia State False Medicaid Claims Act, Georgia Code § 49-4-168.1, *et seq*.

41

98.     By virtue of the acts described above and Defendants' deceptive and fraudulent actions, Defendants knowingly presented false or fraudulent claims for payment or knowingly caused false or fraudulent claims for payment to be presented, to officials to the State of Georgia in violation of the Georgia State False Medicaid Claims Act.

99.     The false claims for payment presented or caused to be presented by Defendants include all claims for reimbursement from the State of Georgia since the inception of the scheme described herein.

100.    By virtue of the false claims presented or caused to be presented by Defendants, the State of Georgia has suffered actual damages and is entitled to recover three times the amount by which it is damaged, plus civil money penalties of not less than $5,500 and not more than $11,000 for each of the false claims presented or caused to be presented, and other monetary relief as appropriate.

## COUNT IV

Claim By and on Behalf of the United States under the False Claims Act Relating to Defendants' above-referenced conduct (False Records or Statements)

101.    Plaintiff realleges and incorporates by reference paragraph "1" through "100" as though fully set forth herein.

102. This is a claim under the Georgia State False Medicaid Claims Act, Georgia Code § 49-4-168.1, *et seq*.

103. The Plaintiff/Relator has standing to maintain this action by virtue of the Georgia State False Medicaid Claims Act, Georgia Code § 49-4-168.1, *et seq*.

104. By virtue of the acts described above and Defendants' use of, or activities causing to be used, false records and statements to get false and fraudulent claims paid and approved by the State of Georgia, Defendants caused to be made or used false records or statements to get false and fraudulent claims paid or approved by an agency of the State of Georgia, in violation of the Georgia State False Medicaid Claims Act.

105. By virtue of, and as a result of, the false records and statements used to get false claims by the State of Georgia, the State of Georgia suffered actual damages and is entitled to recover three times the amount by which it is damaged, plus civil money penalties of not less than $5,500 and not more than $11,000 for each of the false claims presented or caused to be presented, and other monetary relief as appropriate.

## COUNT V

Claim By and on Behalf of the United States under the False Claims Act Relating to Defendants' above-referenced conduct (Presenting False Claims)

43

106. Plaintiff realleges and incorporates by reference paragraph "1" through "105" as though fully set forth herein.

107. This is a claim under the California False Claims Act, (Gov. Code § 12650, *et seq*.).

108. The Plaintiff/Relator has standing to maintain this action by virtue of the California False Claims Act (Gov. Code § 12650, *et seq*.).

109. By virtue of the acts described above and Defendants' deceptive and fraudulent actions, Defendants knowingly presented false or fraudulent claims for payment or knowingly caused false or fraudulent claims for payment to be presented, to officials to the State of California in violation of the California False Claims Act.

110. The false claims for payment presented or caused to be presented by Defendants include all claims for reimbursement from the State of California since the inception of the scheme described herein.

111. By virtue of the false claims presented or caused to be presented by Defendants, the State of California has suffered actual damages and is entitled to recover three times the amount by which it is damaged, plus civil money penalties of not less than $5,500 and not more than $11,000 for each of the false claims presented or caused to be presented, and other monetary relief as appropriate.

## COUNT VI

Claim By and on Behalf of the United States under the False Claims Act Relating to Defendants' above-referenced conduct (False Records or Statements)

112. Plaintiff realleges and incorporates by reference paragraph "1" through "111" as though fully set forth herein.

113. This is a claim under the California False Claims Act (Gov. Code § 12650, *et seq.*).

114. The Plaintiff/Relator has standing to maintain this action by virtue of the California False Claims Act (Gov. Code § 12650, *et seq.*).

115. By virtue of the acts described above and Defendants' use of, or activities causing to be used, false records and statements to get false and fraudulent claims paid and approved by the State of California, Defendants caused to be made or used false records or statements to get false and fraudulent claims paid or approved by an agency of the State of California, in violation of the California False Claims Act.

116. By virtue of, and as a result of, the false records and statements used to get false claims by the State of California, the State of California suffered actual damages and is entitled to recover three times the amount by which it is damaged, plus civil money penalties of not less than $5,500 and not more than $11,000 for

45

each of the false claims presented or caused to be presented, and other monetary relief as appropriate.

## COUNT VII

Claim By and on Behalf of the United States under the False Claims Act Relating to Defendants' above-referenced conduct (Presenting False Claims)

117. Plaintiff realleges and incorporates by reference paragraph "1" through "116" as though fully set forth herein.

118. This is a claim under the Colorado Medicaid False Claims Act, (Colo. Rev. State. 25.5-4-303.5, *et seq.*).

119. The Plaintiff/Relator has standing to maintain this action by virtue of the Colorado Medicaid False Claims Act (Colo. Rev. State. 25.5-4-303.5, *et seq.*).

120. By virtue of the acts described above and Defendants' deceptive and fraudulent actions, Defendants knowingly presented false or fraudulent claims for payment or knowingly caused false or fraudulent claims for payment to be presented, to officials to the State of Colorado in violation of the Colorado Medicaid False Claims Act.

121. The false claims for payment presented or caused to be presented by Defendants include all claims for reimbursement from the State of Colorado since the inception of the scheme described herein.

122. By virtue of the false claims presented or caused to be presented by Defendants, the State of Colorado has suffered actual damages and is entitled to recover three times the amount by which it is damaged, plus civil money penalties of not less than $5,000 and not more than $10,000 for each of the false claims presented or caused to be presented, and other monetary relief as appropriate.

## COUNT VIII

Claim By and on Behalf of the United States under the False Claims Act Relating to Defendants' above-referenced conduct (False Records or Statements)

123. Plaintiff realleges and incorporates by reference paragraph "1" through "122" as though fully set forth herein.

124. This is a claim under the Colorado Medicaid False Claims Act (Colo. Rev. State. 25.5-4-303.5, *et seq.*).

125. The Plaintiff/Relator has standing to maintain this action by virtue of the Colorado Medicaid False Claims Act (Colo. Rev. State. 25.5-4-303.5, *et seq.*).

126. By virtue of the acts described above and Defendants' use of, or activities causing to be used, false records and statements to get false and fraudulent claims paid and approved by the State of Colorado, Defendants caused to be made or used false records or statements to get false and fraudulent claims

47

paid or approved by an agency of the State of Colorado, in violation of the Colorado Medicaid False Claims Act.

127. By virtue of, and as a result of, the false records and statements used to get false claims by the State of Colorado, the State of Colorado suffered actual damages and is entitled to recover three times the amount by which it is damaged, plus civil money penalties of not less than $5,000 and not more than $10,000 for each of the false claims presented or caused to be presented, and other monetary relief as appropriate.

## COUNT IX

Claim By and on Behalf of the United States under the False Claims Act Relating to Defendants' above-referenced conduct (Presenting False Claims)

128. Plaintiff realleges and incorporates by reference paragraph "1" through "127" as though fully set forth herein.

129. This is a claim under the Connecticut False Claims Act for Medical Assistance Programs (Conn. Gen. Stat. § 17b-301(a), *et seq.*)

130. The Plaintiff/Relator has standing to maintain this action by virtue of the Connecticut False Claims Act for Medical Assistance Programs (Conn. Gen. Stat. § 17b-301(a), *et seq.*)

131.   By virtue of the acts described above and Defendants' deceptive and fraudulent actions, Defendants knowingly presented false or fraudulent claims for payment or knowingly caused false or fraudulent claims for payment to be presented, to officials to the State of Connecticut in violation of the Connecticut False Claims Act for Medical Assistance Programs.

132.   The false claims for payment presented or caused to be presented by Defendants include all claims for reimbursement from the State of Connecticut since the inception of the scheme described herein.

133.   By virtue of the false claims presented or caused to be presented by Defendants, the State of Connecticut has suffered actual damages and is entitled to recover three times the amount by which it is damaged, plus civil money penalties of not less than $5,000 and not more than $10,000 for each of the false claims presented or caused to be presented, and other monetary relief as appropriate.

## COUNT X

Claim By and on Behalf of the United States under the False Claims Act Relating to Defendants' above-referenced conduct (False Records or Statements)

134.   Plaintiff realleges and incorporates by reference paragraph "1" through "133" as though fully set forth herein.

49

135.    This is a claim under the Connecticut False Claims Act for Medical Assistance Programs (Conn. Gen. Stat. § 17b-301(a), *et seq*.).

136.    The Plaintiff/Relator has standing to maintain this action by virtue of the Connecticut False Claims Act for Medical Assistance Programs (Conn. Gen. Stat. § 17b-301(a), *et seq*.).

137.    By virtue of the acts described above and Defendants' use of, or activities causing to be used, false records and statements to get false and fraudulent claims paid and approved by the State of Connecticut, Defendants caused to be made or used false records or statements to get false and fraudulent claims paid or approved by an agency of the State of Connecticut, in violation of the Connecticut False Claims Act for Medical Assistance Programs.

138.    By virtue of, and as a result of, the false records and statements used to get false claims by the State of Connecticut, the State of Connecticut suffered actual damages and is entitled to recover three times the amount by which it is damaged, plus civil money penalties of not less than $5,000 and not more than $10,000 for each of the false claims presented or caused to be presented, and other monetary relief as appropriate.

## COUNT XI

Claim By and on Behalf of the United States under the False Claims Act

Relating to Defendants' above-referenced conduct (Presenting False Claims)

139.   Plaintiff realleges and incorporates by reference paragraph "1" through "138" as though fully set forth herein.

140.   This is a claim under the Florida False Claims Act, (Fla. Stat. Ann § 68.081, *et seq.*

141.   The Plaintiff/Relator has standing to maintain this action by virtue of the Florida False Claims Act, (Fla. Stat. Ann § 68.081, *et seq.*).

142.   By virtue of the acts described above and Defendants' deceptive and fraudulent actions, Defendants knowingly presented false or fraudulent claims for payment or knowingly caused false or fraudulent claims for payment to be presented, to officials to the State of Florida in violation of the Florida False Claims Act.

143.   The false claims for payment presented or caused to be presented by Defendants include all claims for reimbursement from the State of Florida since the inception of the scheme described herein.

144.   By virtue of the false claims presented or caused to be presented by Defendants, the State of Florida has suffered actual damages and is entitled to recover three times the amount by which it is damaged, plus civil money penalties

of not less than $5,500 and not more than $11,000 for each of the false claims presented or caused to be presented, and other monetary relief as appropriate.

## COUNT XII

Claim By and on Behalf of the United States under the False Claims Act Relating to Defendants' above-referenced conduct (False Records or Statements)

145. Plaintiff realleges and incorporates by reference paragraph "1" through "144" as though fully set forth herein.

146. This is a claim under the Florida False Claims Act (Fla. Stat. Ann § 68.081, *et seq*.).

147. The Plaintiff/Relator has standing to maintain this action by virtue of the Florida False Claims Act (Fla. Stat. Ann § 68.081, *et seq*.).

148. By virtue of the acts described above and Defendants' use of, or activities causing to be used, false records and statements to get false and fraudulent claims paid and approved by the State of Florida, Defendants caused to be made or used false records or statements to get false and fraudulent claims paid or approved by an agency of the State of Florida, in violation of the Florida False Claims Act.

149. By virtue of, and as a result of, the false records and statements used to get false claims by the State of Florida, the State of Florida suffered actual

52

damages and is entitled to recover three times the amount by which it is damaged, plus civil money penalties of not less than $5,500 and not more than $11,000 for each of the false claims presented or caused to be presented, and other monetary relief as appropriate.

## COUNT XIII

Claim By and on Behalf of the United States under the False Claims Act Relating to Defendants' above-referenced conduct (Presenting False Claims)

150. Plaintiff realleges and incorporates by reference paragraph "1" through "149" as though fully set forth herein.

151. This is a claim under the Illinois Whistleblower Reward and Protection Act, 740 ILCS 175/1, *et seq*.

152. The Plaintiff/Relator has standing to maintain this action by virtue of the Illinois Whistleblower Reward and Protection Act, 740 ILCS 175/1, *et seq*.

153. By virtue of the acts described above and Defendants' deceptive and fraudulent actions, Defendants knowingly presented false or fraudulent claims for payment or knowingly caused false or fraudulent claims for payment to be presented, to officials to the State of Illinois in violation of the Illinois Whistleblower Reward and Protection Act.

154. The false claims for payment presented or caused to be presented by Defendants include all claims for reimbursement from the State of Illinois since the inception of the scheme described herein.

155. By virtue of the false claims presented or caused to be presented by Defendants, the State of Illinois has suffered actual damages and is entitled to recover three times the amount by which it is damaged, plus civil money penalties of not less than $5,000 and not more than $11,000 for each of the false claims presented or caused to be presented, and other monetary relief as appropriate.

## COUNT XIV

Claim By and on Behalf of the United States under the False Claims Act Relating to Defendants' above-referenced conduct (False Records or Statements)

156. Plaintiff realleges and incorporates by reference paragraph "1" through "155" as though fully set forth herein.

157. This is a claim under the Illinois Whistleblower Reward and Protection Act, 740 ILCS 175/1, *et seq*.

158. The Plaintiff/Relator has standing to maintain this action by virtue of the Illinois Whistleblower Reward and Protection Act, 740 ILCS 175/1, *et seq*.

159. By virtue of the acts described above and Defendants' use of, or activities causing to be used, false records and statements to get false and

fraudulent claims paid and approved by the State of Illinois, Defendants caused to be made or used false records or statements to get false and fraudulent claims paid or approved by an agency of the State of Illinois, in violation of the Illinois Whistleblower Reward and Protection Act.

160.   By virtue of, and as a result of, the false records and statements used to get false claims by the State Illinois, the State of Illinois suffered actual damages and is entitled to recover three times the amount by which it is damaged, plus civil money penalties of not less than $5,000 and not more than $10,000 for each of the false claims presented or caused to be presented, and other monetary relief as appropriate.

## COUNT XV

Claim By and on Behalf of the United States under the False Claims Act Relating to Defendants' above-referenced conduct (Presenting False Claims)

161.   Plaintiff realleges and incorporates by reference paragraph "1" through "160" as though fully set forth herein.

162.   This is a claim under the Louisiana False Claims Act/Medical Assistance Programs Integrity Law (LSA R.S. 46.437.1, *et seq.*).

163.   The Plaintiff/Relator has standing to maintain this action by virtue of the Louisiana False Claims Act/Medical Assistance Programs Integrity (LSA R.S. 46.437.1, *et seq.*).

164.   By virtue of the acts described above and Defendants' deceptive and fraudulent actions, Defendants knowingly presented false or fraudulent claims for payment or knowingly caused false or fraudulent claims for payment to be presented, to officials to the State of Louisiana in violation of the Louisiana False Claims Act/Medical Assistance Programs Integrity Law.

165.   The false claims for payment presented or caused to be presented by Defendants include all claims for reimbursement from the State of Louisiana since the inception of the scheme described herein.

166.   By virtue of the false claims presented or caused to be presented by Defendants, the State of Louisiana has suffered actual damages and is entitled to recover three times the amount by which it is damaged, plus civil money penalties not to exceed $10,000 of the false claims presented or caused to be presented, and other monetary relief as appropriate.

## COUNT XVI

Claim By and on Behalf of the United States under the False Claims Act Relating to Defendants' above-referenced conduct (False Records or Statements)

167. Plaintiff realleges and incorporates by reference paragraph "1" through "166" as though fully set forth herein.

168. This is a claim under the Louisiana False Claims Act/Medical Assistance Programs Integrity Law (LSA R.S. 46.437.1, *et seq.*).

169. The Plaintiff/Relator has standing to maintain this action by virtue of the Louisiana False Claims Act/Medical Assistance Programs Integrity Law (LSA R.S. 46.437.1, *et seq.*).

170. By virtue of the acts described above and Defendants' use of, or activities causing to be used, false records and statements to get false and fraudulent claims paid and approved by the State of Louisiana, Defendants caused to be made or used false records or statements to get false and fraudulent claims paid or approved by an agency of the State of Louisiana, in violation of the Louisiana False Claims Act/Medical Assistance Programs Integrity Law.

171. By virtue of, and as a result of, the false records and statements used to get false claims by the State of Louisiana, the State of Louisiana suffered actual damages and is entitled to recover three times the amount by which it is damaged, plus civil money penalties not to exceed $10,000 for each of the false claims presented or caused to be presented, and other monetary relief as appropriate.

## COUNT XVII

Claim By and on Behalf of the United States under the False Claims Act Relating to Defendants' above-referenced conduct (Presenting False Claims)

172. Plaintiff realleges and incorporates by reference paragraph "1" through "171" as though fully set forth herein.

173. This is a claim under the Massachusetts False Claims Act, (Mass. Gen. Laws § 5A, *et seq.*).

174. The Plaintiff/Relator has standing to maintain this action by virtue of the Massachusetts False Claims Act, (Mass. Gen. Laws § 5A, *et seq.*).

175. By virtue of the acts described above and Defendants' deceptive and fraudulent actions, Defendants knowingly presented false or fraudulent claims for payment or knowingly caused false or fraudulent claims for payment to be presented, to officials to the State of Massachusetts in violation of the Massachusetts False Claims Act.

176. The false claims for payment presented or caused to be presented by Defendants include all claims for reimbursement from the State of Massachusetts since the inception of the scheme described herein.

177. By virtue of the false claims presented or caused to be presented by Defendants, the State of Massachusetts has suffered actual damages and is entitled

58

to recover three times the amount by which it is damaged, plus civil money penalties of not less than \$5,000 and not more than \$10,000 for each of the false claims presented or caused to be presented, and other monetary relief as appropriate.

## COUNT XVIII

Claim By and on Behalf of the United States under the False Claims Act Relating to Defendants' above-referenced conduct (False Records or Statements)

178. Plaintiff realleges and incorporates by reference paragraph "1" through "177" as though fully set forth herein.

179. This is a claim under the Massachusetts False Claims Act, (Mass. Gen. Laws § 5A, *et seq*.).

180. The Plaintiff/Relator has standing to maintain this action by virtue of the Massachusetts False Claims Act, (Mass. Gen. Laws § 5A, *et seq*.).

181. By virtue of the acts described above and Defendants' use of, or activities causing to be used, false records and statements to get false and fraudulent claims paid and approved by the State of Massachusetts, Defendants caused to be made or used false records or statements to get false and fraudulent claims paid or approved by an agency of the State of Massachusetts, in violation of the Massachusetts False Claims Act.

182.   By virtue of, and as a result of, the false records and statements used to get false claims by the State of Massachusetts, the State of Massachusetts suffered actual damages and is entitled to recover three times the amount by which it is damaged, plus civil money penalties of not less than $5,000 and not more than $10,000 for each of the false claims presented or caused to be presented, and other monetary relief as appropriate.

## COUNT XIX

Claim By and on Behalf of the United States under the False Claims Act Relating to Defendants' above-referenced conduct (Presenting False Claims)

183.   Plaintiff realleges and incorporates by reference paragraph "1" through "182" as though fully set forth herein.

184.   This is a claim under the New Jersey False Claims Act (NJ ST. 2A:32C-1, *et seq.*).

185.   The Plaintiff/Relator has standing to maintain this action by virtue of the New Jersey False Claims Act, (NJ ST. 2A:32C-1, *et seq.*).

186.   By virtue of the acts described above and Defendants' deceptive and fraudulent actions, Defendants knowingly presented false or fraudulent claims for payment or knowingly caused false or fraudulent claims for payment to be

presented, to officials to the State of New Jersey in violation of the New Jersey False Claims Act, (NJ St 2A:32C-1, *et seq.*).

187.  The false claims for payment presented or caused to be presented by Defendants include all claims for reimbursement from the State of New Jersey since the inception of the scheme described herein.

188.  By virtue of the false claims presented or caused to be presented by Defendants, the State of New Jersey has suffered actual damages and is entitled to recover three times the amount by which it is damaged, plus civil money penalties of not less than $5,500 and not more than $11,000 for each of the false claims presented or caused to be presented, and other monetary relief as appropriate.

## COUNT XX

Claim By and on Behalf of the United States under the False Claims Act Relating to Defendants' above-referenced conduct (False Records or Statements)

189.  Plaintiff realleges and incorporates by reference paragraph "1" through "188" as though fully set forth herein.

190.  This is a claim under the New Jersey False Claims Act, (NJ ST 2A:32C-1, *et seq.*).

191.  The Plaintiff/Relator has standing to maintain this action by virtue of the New Jersey False Claims Act, (NJ ST. 2A:32C-1, *et seq.*).

192. By virtue of the acts described above and Defendants' use of, or activities causing to be used, false records and statements to get false and fraudulent claims paid and approved by the State of New Jersey, Defendants caused to be made or used false records or statements to get false and fraudulent claims paid or approved by an agency of the State of New Jersey, in violation of the New Jersey False Claims Act.

193. By virtue of, and as a result of, the false records and statements used to get false claims by the State of New Jersey, the State of New Jersey suffered actual damages and is entitled to recover three times the amount by which it is damaged, plus civil money penalties of not less than $5,500 and not more than $11,000 for each of the false claims presented or caused to be presented, and other monetary relief as appropriate.

## COUNT XXI

Claim By and on Behalf of the United States under the False Claims Act Relating to Defendants' above-referenced conduct (Presenting False Claims)

194. Plaintiff realleges and incorporates by reference paragraph "1" through "193" as though fully set forth herein.

195. This is a claim under the New York False Claims Act, (NY STATE FIN § 187, *et seq.*).

196. The Plaintiff/Relator has standing to maintain this action by virtue of the New York Finance Law, (NY STATE FIN § 187, *et seq.*).

197. By virtue of the acts described above with respect to Defendants' deceptive and fraudulent actions, Defendants knowingly presented false or fraudulent claims for payment, or knowingly caused false or fraudulent claims for payment to be presented, to officials to the State of New York in violation of the New York False Claims Act.

198. The false claims for payment presented or caused to be presented by Defendants include all claims for reimbursement from the State of New York since the inception of the scheme described herein.

199. By virtue of the false claims presented or caused to be presented by Defendants, the State of New York has suffered actual damages and is entitled to recover three times the amount by which it is damaged, plus civil money penalties of not less than $6,000 and not more than $12,000 for each of the false claims presented or caused to be presented, and other monetary relief as appropriate.

## COUNT XXII

Claim By and on Behalf of the United States under the False Claims Act Relating to Defendants' above-referenced conduct (False Records or Statements)

200. Plaintiff realleges and incorporates by reference paragraph "1" through "199" as though fully set forth herein.

201. This is a claim on behalf of the State of New York under the New York False Claims Act, New York Finance Law Article XIII, (NY STATE FIN § 187, *et seq.*).

202. The Plaintiff/Relator has standing to maintain this action by virtue of the York False Claims Act, New York Finance Law Article XIII, (NY STATE FIN § 187, *et seq.*).

203. By virtue of the acts described above and Defendants' use of, or activities causing to be used, false records and statements to get false and fraudulent claims paid and approved by the State of New York, Defendants caused to be made or used false records or statements to get false and fraudulent claims paid or approved by an agency of the State of New York, in violation of the New York False Claims Act.

204. By virtue of, and as a result of, the false records and statements used to get false claims by the Government, the State of New York suffered actual damages and is entitled to recover three times the amount by which it is damaged, plus civil money penalties of not less than $6,000 and not more than $12,000 for

each of the false claims presented or caused to be presented, and other monetary relief as appropriate.

## COUNT XXIII

Claim By and on Behalf of the United States under the False Claims Act Relating to Defendants' above-referenced conduct (Presenting False Claims)

205. Plaintiff realleges and incorporates by reference paragraph "1" through "204" as though fully set forth herein.

206. This is a claim under the North Carolina False Claims Act (N.C. G.S.A. § 108A-70-10, *et seq*.).

207. The Plaintiff/Relator has standing to maintain this action by virtue of the North Carolina False Claims Act, (N.C. G.S.A. § 108A-70-10, *et seq*.).

208. By virtue of the acts described above and Defendants' deceptive and fraudulent actions, Defendants knowingly presented false or fraudulent claims for payment or knowingly caused false or fraudulent claims for payment to be presented, to officials to the State of North Carolina in violation of the North Carolina False Claims Act.

209. The false claims for payment presented or caused to be presented by Defendants include all claims for reimbursement from the State of North Carolina since the inception of the scheme described herein.

210. By virtue of the false claims presented or caused to be presented by Defendants, the State of North Carolina has suffered actual damages and is entitled to recover three times the amount by which it is damaged, plus civil money penalties of not less than $5,500 and not more than $11,000 for each of the false claims presented or caused to be presented, and other monetary relief as appropriate.

## COUNT XXIV

Claim By and on Behalf of the United States under the False Claims Act Relating to Defendants' above-referenced conduct (False Records or Statements)

211. Plaintiff realleges and incorporates by reference paragraph "1" through "210" as though fully set forth herein.

212. This is a claim under the North Carolina False Claims Act, (N.C. G.S.A. § 108A-70-10, *et seq*.).

213. The Plaintiff/Relator has standing to maintain this action by virtue of the North Carolina False Claims Act, (N.C. G.S.A. § 108A-70-10, *et seq*.).

214. By virtue of the acts described above and Defendants' use of, or activities causing to be used, false records and statements to get false and fraudulent claims paid and approved by the State of North Carolina, Defendants caused to be made or used false records or statements to get false and fraudulent

66

claims paid or approved by an agency of the State of North Carolina, in violation of the North Carolina False Claims Act, (N.C. G.S.A. § 108A-70-10, *et seq*.).

215.   By virtue of, and as a result of, the false records and statements used to get false claims by the State of North Carolina, the State of North Carolina suffered actual damages and is entitled to recover three times the amount by which it is damaged, plus civil money penalties of not less than $5,500 and not more than $11,000 for each of the false claims presented or caused to be presented, and other monetary relief as appropriate.

## COUNT XXV

Claim By and on Behalf of the United States under the False Claims Act Relating to Defendants' above-referenced conduct (Presenting False Claims)

216.   Plaintiff realleges and incorporates by reference paragraph "1" through "215" as though fully set forth herein.

217.   This is a claim under the Texas Medicaid Fraud Prevention Act, (TEX. HUM. RES. Code § 36.001, *et seq*.).

218.   The Plaintiff/Relator has standing to maintain this action by virtue of the Texas Medicaid Fraud Prevention Act, (TEX. HUM. RES. Code § 36.001, *et seq*. and Tex. Gov't Code Ann. § 531.101, *et seq*.).

219. By virtue of the acts described above and Defendants' deceptive and fraudulent actions, Defendants knowingly presented false or fraudulent claims for payment or knowingly caused false or fraudulent claims for payment to be presented, to officials to the State of Texas in violation of the Texas Medicaid Fraud Prevention Act.

220. The false claims for payment presented or caused to be presented by Defendants include all claims for reimbursement from the State of Texas since the inception of the scheme described herein.

221. By virtue of the false claims presented or caused to be presented by Defendants, the State of Texas has suffered actual damages and is entitled to recover three times the amount by which it is damaged, plus civil money penalties of between $5,000 and $10,000 for each violation of the Act, escalated to $15,000 if the violation results in harm to an elderly person for each of the false claims presented or caused to be presented, and other monetary relief as appropriate.

## COUNT XXVI

Claim By and on Behalf of the United States under the False Claims Act Relating to Defendants' above-referenced conduct (False Records or Statements)

222. Plaintiff realleges and incorporates by reference paragraph "1" through "221" as though fully set forth herein.

223.   This is a claim under Texas Medicaid Fraud Prevention Act, (TEX. HUM. RES. Code § 36.001, *et seq*. and Tex. Gov't Code Ann. § 531.101, *et seq*.).

224.   The Plaintiff/Relator has standing to maintain this action by virtue of the Texas Medicaid Fraud Prevention Act, (TEX. HUM. RES. Code § 36.001, *et seq*.).

225.   By virtue of the acts described above and Defendants' use of, or activities causing to be used, false records and statements to get false and fraudulent claims paid and approved by the State of Texas, Defendants caused to be made or used false records or statements to get false and fraudulent claims paid or approved by an agency of the State of Texas, in violation of the Texas Medicaid Fraud Prevention Act.

226.   By virtue of, and as a result of, the false records and statements used to get false claims by the State of Texas, the State of Texas suffered actual damages and is entitled to recover three times the amount by which it is damaged, plus civil money penalties of between $5,000 and $10,000 for each violation of the Act, escalated to $15,000 if the violation results in harm to an elderly person for each of the false claims presented or caused to be presented, and other monetary relief as appropriate.

## COUNT XXVII

Claim By and on Behalf of the United States under the False Claims Act Relating to Defendants' above-referenced conduct (Presenting False Claims)

227. Plaintiff realleges and incorporates by reference paragraph "1" through "226" as though fully set forth herein.

228. This is a claim under the Virginia Fraud Against Taxpayers Act, §8.01 – 216.1.

229. The Plaintiff/Relator has standing to maintain this action by virtue of the Virginia Fraud Against Taxpayers Act, §8.01 – 216.1.

230. By virtue of the acts described above and Defendants' deceptive and fraudulent actions, Defendants knowingly presented false or fraudulent claims for payment or knowingly caused false or fraudulent claims for payment to be presented, to officials to the State of Virginia in violation of the Virginia Fraud Against Taxpayers Act.

231. The false claims for payment presented or caused to be presented by Defendants include all claims for reimbursement from the State of Virginia since the inception of the scheme described herein.

232. By virtue of the false claims presented or caused to be presented by Defendants, the State of Virginia has suffered actual damages and is entitled to

recover three times the amount by which it is damaged, plus civil money penalties of not less than $5,500 and not more than $11,000 for each of the false claims presented or caused to be presented, and other monetary relief as appropriate.

## COUNT XXVIII

Claim By and on Behalf of the United States under the False Claims Act Relating to Defendants' above-referenced conduct (False Records or Statements)

233. Plaintiff realleges and incorporates by reference paragraph "1" through "232" as though fully set forth herein.

234. This is a claim under the Virginia Fraud Against Taxpayers Act, §8.01 – 216.1.

235. The Plaintiff/Relator has standing to maintain this action by virtue of the Virginia Fraud Against Taxpayers Act, §8.01 – 216.1.

236. By virtue of the acts described above and Defendants' use of, or activities causing to be used, false records and statements to get false and fraudulent claims paid and approved by the State of Virginia, Defendants caused to be made or used false records or statements to get false and fraudulent claims paid or approved by an agency of the State of Virginia, in violation of the Virginia Fraud Against Taxpayers Act, §8.01 – 216.1.

71

237.  By virtue of, and as a result of, the false records and statements used to get false claims by the State of Virginia, the State of Virginia suffered actual damages and is entitled to recover three times the amount by which it is damaged, plus civil money penalties of not less than $5,500 and not more than $11,000 for each of the false claims presented or caused to be presented, and other monetary relief as appropriate.

## COUNT XXIX

Claim By and on Behalf of the United States under the False Claims Act Relating to Defendants' above-referenced conduct (Presenting False Claims)

238.  Plaintiff realleges and incorporates by reference paragraph "1" through "237" as though fully set forth herein.

239.  This is a claim under the Washington State Medicaid Fraud False Claims Act, (RCW 74.66.005, *et seq*.).

240.  The Plaintiff/Relator has standing to maintain this action by virtue of the Washington State Medicaid Fraud False Claims Act, (RCW 74.66.005, *et seq*.).

241.  By virtue of the acts described above and Defendants' deceptive and fraudulent actions, Defendants knowingly presented false or fraudulent claims for payment or knowingly caused false or fraudulent claims for payment to be

presented, to officials to the State of Washington in violation of the Washington State Medicaid Fraud False Claims Act.

242. The false claims for payment presented or caused to be presented by Defendants include all claims for reimbursement from the State of Washington since the inception of the scheme described herein.

243. By virtue of the false claims presented or caused to be presented by Defendants, the State of Washington has suffered actual damages and is entitled to recover three times the amount by which it is damaged, plus civil money penalties of not less than $5,500 and not more than $11,000 for each of the false claims presented or caused to be presented, and other monetary relief as appropriate.

### COUNT XXX

Claim By and on Behalf of the United States under the False Claims Act Relating to Defendants' above-referenced conduct (False Records or Statements)

244. Plaintiff realleges and incorporates by reference paragraph "1" through "243" as though fully set forth herein.

245. This is a claim under the Washington State Medicaid Fraud False Claims Act, (RCW 74.66.005, *et seq*.).

246. The Plaintiff/Relator has standing to maintain this action by virtue of the Washington State Medicaid Fraud False Claims Act, (RCW 74.66.005, *et seq*.).

247. By virtue of the acts described above and Defendants' use of, or activities causing to be used, false records and statements to get false and fraudulent claims paid and approved by the State of Washington, Defendants caused to be made or used false records or statements to get false and fraudulent claims paid or approved by an agency of the State of Washington, in violation of the Washington State Medicaid Fraud False Claims Act, (RCW 74.66.005, *et seq*.).

248. By virtue of, and as a result of, the false records and statements used to get false claims by the State of Washington, the State of Washington suffered actual damages and is entitled to recover three times the amount by which it is damaged, plus civil money penalties of not less than $5,500 and not more than $11,000 for each of the false claims presented or caused to be presented, and other monetary relief as appropriate.

## COUNT XXI

### FALSE CLAIMS ACT
### 31 U.S.C. § 3730(h)
### (Defendant PSA)

249. Plaintiff realleges and incorporates by references in paragraphs "1" through "248" as though fully set forth herein.

250. This is a claim for damages under the False Claims Act, 31 U.S.C. § 3730(h).

74

251. From the beginning of her employment in August 2015, Relator reported her good faith belief that Defendants may be violating the False Claims Act as set forth herein to Defendant PS's employees and management officials.

252. In August 2015, her supervisor told her in no uncertain terms not to use "the fraud word" and sought to silence her and intimidate her in violation of the provisions of 31 U.S.C. § 3730(h) and Various State Acts prohibiting discrimination by employers against employees who investigate and/or report violations of the False Claims Act and various state false claims act, anti-retaliation provisions and PSA's internal Compliance Policies.

253. As a direct and proximate result of the demotion of Relator's employment, Relator has sustained, among other things, emotional distress, fear and anxiety.

254. As a direct and proximate result of Defendant PSA's conduct, Relator is entitled to recover her attorney's fees and costs incurred herein.

255. Defendant PSA's acts against Relator were willful, wanton and malicious and violated Relator's federally-protected rights and Relator is entitled to recover punitive and exemplary damages in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, the United States and the states of Georgia, California, Colorado, Connecticut, Florida, Illinois, Louisiana, Massachusetts, New Jersey, New York, North Carolina, Texas, Virginia and Washington demand and pray that judgment to be entered in their favor as follows against Defendants jointly and severally:

1.     On Counts I and II, under the False Claims Act, against Defendants for treble the amount of the United States' actual damages (including investigative costs), plus civil penalties as are allowable by law for each false claim or record and for all costs of this civil action;

2.     On Counts III and IV, under the Georgia State False Medicaid Claims Act, against Defendants for treble the amount of actual damages suffered by the State of Georgia (including investigative costs), plus civil penalties as are allowable by law for each false claim or record and for all costs of this civil action;

3.     On Counts V and VI, under the California False Claims Act, against Defendants for treble the amount of the State of California actual damages (including investigative costs), plus civil penalties as are allowable by law for each false claim or record and for all costs of this civil action;

4.      On Counts VII and VIII, under the Colorado Medicaid False Claims Act, against Defendants for treble the amount of the State of Colorado actual damages (including investigative costs), plus civil penalties as are allowable by law for each false claim or record and for all costs of this civil action;

5.      On Counts IX and X, under the Connecticut False Claims Act for Medical Assistance Programs, against Defendants for treble the amount of actual damages suffered by the State of Connecticut (including investigative costs), plus civil penalties as are allowable by law for each false claim or record and for all costs of this civil action;

6.      On Counts XI and XII, under the Florida False Claims Act, against Defendants for treble the amount of the State of Florida's actual damages (including investigative costs), plus civil penalties as are allowable by law for each false claim or record and for all costs of this civil action;

7.      On Counts XIII and XIV, under the Illinois Whistleblower Reward and Protection, against Defendants for treble the amount of actual damages suffered by the State of Illinois (including investigative costs), plus civil penalties as are allowable by law for each false claim or record and for all costs of this civil action;

77

8.     On Counts XV and XVI, under the Louisiana False Claims Act/Medical Assistance Programs, against Defendants for treble the amount of the State of Louisiana actual damages (including investigative costs), plus civil penalties as are allowable by law for each false claim or record and for all costs of this civil action;

9.     On Counts XVII and XVIII, under the Massachusetts False Claims Act, against Defendants for treble the amount of actual damages suffered by the State of Massachusetts (including investigative costs), plus civil penalties as are allowable by law for each false claim or record and for all costs of this civil action;

10.    On Counts XIX and XX, under the New Jersey False Claims Act, against Defendants for treble the amount of actual damages suffered by the State of New Jersey (including investigative costs), plus civil penalties as are allowable by law for each false claim or record and for all costs of this civil action;

11.    On Counts XXI and XXII New York False Claims Act, against Defendants for treble the amount of the State of New York's actual damages (including investigative costs), plus civil penalties as are allowable by law for each false claim or record and for all costs of this civil action;

12.    On Counts XXIII and XXIV, under the North Carolina False Claims Act, against Defendants for treble the amount of actual damages suffered by the

State of North Carolina (including investigative costs), plus civil penalties as are allowable by law for each false claim or record and for all costs of this civil action;

13.    On Counts XXV and XXVI, under the Texas Medicaid Fraud Prevention Act, against Defendants for treble the amount of actual damages suffered by the State of Texas (including investigative costs), plus civil penalties as are allowable by law for each false claim or record and for all costs of this civil action and as otherwise authorized under Tex. Gov't Code Ann. §531.101, *et seq.*

14.    On Counts XXVII and XXVIII, under the Virginia Fraud Against Taxpayers Act, against Defendants for treble the amount of actual damages suffered by the State of Virginia (including investigative costs), plus civil penalties as are allowable by law for each false claim or record and for all costs of this civil action;

15.    On Counts XXIX and XXX, under the Washington State Medicaid Fraud False Claims Act, against Defendants for treble the amount of actual damages suffered by the State of Washington (including investigative costs), plus civil penalties as are allowable by law for each false claim or record and for all costs of this civil action;

16.    For all costs of this civil action; and

17.    For such other and further relief as the Court deems just and equitable.

WHEREFORE, Relator demands and prays that judgment be entered in her favor:

1. On Counts I and II, under the False Claims Act, for a percentage of all civil penalties and damages obtained from Defendants pursuant to 31 U.S.C. § 3730, reasonable attorney's fees and all costs incurred against Defendants;

2. On Counts III and IV, under the Georgia State False Medicaid Claims Act, for a percentage of all civil penalties and damages from Defendants pursuant to the Georgia State False Medicaid Claims Act, reasonable attorney's fees and all costs incurred against Defendants;

3. On Counts V and VI, under the California False Claims Act, for a percentage of all civil penalties and damages from Defendants pursuant to the California False Claims Act, reasonable attorney's fees and all costs incurred against Defendants;

4. On Counts VII and VIII, under the Colorado Medicaid False Medicaid Claims Act, for a percentage of all civil penalties and damages from Defendants pursuant to the Colorado State False Medicaid Claims Act, reasonable attorney's fees and all costs incurred against Defendants;

5. On Counts IX and X, under the Connecticut False Claims Act for Medical Assistance Programs, for a percentage of all civil penalties and damages

from Defendants pursuant to the Connecticut False Claims Act for Medical Assistance Programs, reasonable attorney's fees and all costs incurred against Defendants;

6.      On Counts XI and XII, under the Florida False Claims Act, for a percentage of all civil penalties and damages from Defendants pursuant to the New Florida False Claims Act, reasonable attorney's fees and all costs incurred against Defendants;

7.      On Counts XIII and XIV, under the Illinois Whistleblower Reward and Protection Act, for a percentage of all civil penalties and damages from Defendants pursuant to the Illinois Whistleblower Reward and Protection Act, reasonable attorney's fees and all costs incurred against Defendants;

8.      On Counts XV and XVI, under the Louisiana State False Claims Act/Medical Assistance Programs, for a percentage of all civil penalties and damages from Defendants pursuant to the Louisiana State False Claims Act/Medical Assistance Programs, reasonable attorney's fees and all costs incurred against Defendants;

9.      On Counts XVII and XVIII, under the Massachusetts False Claims Act, Programs, for a percentage of all civil penalties and damages from Defendants

pursuant to the Massachusetts False Claims Act, reasonable attorney's fees and all costs incurred against Defendants;

10.    On Counts XIX and XX, under the New Jersey False Claims Act, for a percentage of all civil penalties and damages from Defendants pursuant to the New Jersey False Claims Act, reasonable attorney's fees and all costs incurred against Defendants;

11.    On Counts XXI and XXII, under the New York False Claims Act, for a percentage of all civil penalties and damages from Defendants pursuant to the New York False Claims Act, reasonable attorney's fees and all costs incurred against Defendants;

12.    On Counts XXIII and XXIV, under the North Carolina False Claims Act, for a percentage of all civil penalties and damages from Defendants pursuant to the North Carolina False Claims Act, reasonable attorney's fees and all costs incurred against Defendants;

13.    On Counts XXV and XXVI, under the Texas Medicaid Fraud Prevention Act, for a percentage of all civil penalties and damages from Defendants pursuant to the Texas Medicaid Fraud Prevention Act, reasonable attorney's fees and all costs incurred against Defendants and was otherwise permitted under Tex. Gov't Code Ann. §531.101, *et seq.*);

14. On Counts XXVII and XXVIII, under the Virginia Fraud False Claims Act for Medical Assistance Programs, for a percentage of all civil penalties and damages from Defendants pursuant to the Connecticut False Claims Act for Medical Assistance Programs, reasonable attorney's fees and all costs incurred against Defendants;

15. On Counts XXIX and XXX, under the Washington State Medicaid Fraud False Claims Act, for a percentage of all civil penalties and damages from Defendants pursuant to the Washington State Medicaid Fraud False Claims Act, reasonable attorney's fees and all costs incurred against Defendants;

16. Directing Defendant PSA to place Plaintiff/Relator in a position where she would have held but for Defendant PSA's discriminatory and retaliatory treatment of her and to make Plaintiff/Relator whole for all earnings and benefits she would have received but for Defendant PSA's discriminatory and retaliatory treatment including but not limited to wages (including front and back pay and interest thereon) and benefits and any and all other relief afforded under the whistleblower protections contained in 31 U.S.C. § 3730(h), Georgia Code §49-4-168.4 and the protection of employees from discrimination and retaliation under the aforementioned applicable State Acts.

17.     That Plaintiff/Relator recover general compensatory damages in an amount to be proven at trial;

18.     That Plaintiff/Relator recover punitive and exemplary damages in an amount to be proven at trial;

19.     Plaintiff/Relator recover prejudgment and postjudgment interest; and

20.     Such other relief as the Court deems just and proper.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

Respectfully submitted this 22nd day of September, 2015.

Raymond L. Moss
Lead Counsel
Georgia Bar No. 526569
rlmoss@mossgilmorelaw.com

**MOSS & GILMORE LLP**
3630 Peachtree Road
Suite 1025
Atlanta, Georgia 30326
Telephone No. (678) 381-8601
Facsimile No. (815) 364-0515
Email: rlmoss@mossgilmorelaw.com