# IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF GEORGIA
### SAVANNAH DIVISION

UNITED STATES OF AMERICA, ex
rel. Tracy Payton;                     )
                                       )
                                       )
STATE OF GEORGIA, ex. rel.             )
Tracy Payton;                          )
                                       )
STATE OF CALIFORNIA, ex. rel.          )     CASE NO. CV416-102
Tracy Payton;                          )
                                       )
STATE OF COLORADO, ex. rel.            )
Tracy Payton;                          )
                                       )
STATE OF CONNECTICUT, ex. rel.         )
Tracy Payton;                          )
                                       )
STATE OF FLORIDA, ex. rel.             )
Tracy Payton;                          )
                                       )
STATE OF ILLINOIS, ex. rel.            )
Tracy Payton;                          )
                                       )
STATE OF LOUISIANA, ex. rel.           )
Tracy Payton;                          )
                                       )
STATE OF MASSACHUSETTS, ex.            )
rel. Tracy Payton;                     )
                                       )
STATE OF NEW JERSEY, ex. rel.          )
Tracy Payton;                          )
                                       )
STATE OF NEW YORK, ex. rel.            )
Tracy Payton;                          )
                                       )
STATE OF NORTH CAROLINA, ex.           )
rel. Tracy Payton;                     )
                                       )
STATE OF TEXAS, ex. rel. Tracy         )
Payton;                                )
                                       )
STATE OF VIRGINIA, ex. rel.            )
Tracy Payton;                          )
                                       )
STATE OF WASHINGTON, ex. rel.          )



U.S. DISTRICT COURT
Southern District of GA
Filed In Office

M

[illegible] 201[?]

Deputy Clerk

Tracy Payton;                          )
                                       )
    Plaintiffs-Relator,        )
                                       )
v.                                     )
                                       )
PEDIATRIC SERVICES OF AMERICA,         )
INC., a Delaware Corporation;          )
PEDIATRIC SERVICES OF AMERICA,         )
a Georgia Corporation;                 )
PEDIATRIC HEALTHCARE INC.;             )
PEDIATRIC HOME NURSING                 )
SERVICES, collectively doing           )
business as PSA Healthcare;            )
PEDIATRIC SERVICES HOLDING             )
CORPORATION; PORTFOLIO LOGIC,          )
LLC; and J. H. WHITNEY CAPITAL         )
PARTNERS, LLC;                         )
                                       )
    Defendants.                )
_____       )

## O R D E R

Before the Court are Defendants Pediatric Services of America, Inc. (GA) ("PSA Georgia") and Pediatric Home Nursing Services' Motion to Dismiss Claims in Relator's Amended Complaint Barred by the Public Disclosure Bar (Doc. 85), Motion to Dismiss Amended Complaint for Failure to State a Claim and Failure to Plead Fraud With Particularity (Doc. 87), and Amended Motion for Judicial Notice (Doc. 89).[1] For the reasons stated below, Defendants' motions are **GRANTED**.[2] However, Relator shall

---

[1] Because an amended complaint was filed in this case, Defendants' earlier filed motions to dismiss (Doc. 48; Doc. 50; Doc. 52; Doc. 54; Doc. 57) and Motion for Judicial Notice (Doc. 56) are **DISMISSED AS MOOT.**

[2] This Court previously stayed this case pending resolution of Defendants' Motions to Dismiss. (Doc. 82.) Because the Court has

have **fourteen days** from the date of this order to submit an amended complaint correcting the deficiencies identified below.[3] Relator is on **NOTICE** that failure to do so will result in dismissal of this case.

## BACKGROUND

Relator Tracy Payton brings this case on behalf of the United States and fourteen other Plaintiff States. (Doc. 1.) Relator brings violations of the False Claims Act ("FCA"), 31 U.S.C. § 3729; the Georgia False Medicaid Claims Act ("GMFCA"), O.C.G.A. § 49-4-168; the California False Claims Act, Cal. Gov't Code. § 12650; the Colorado Medicaid False Claims Act, Colo. Rev. Stat. § 25.5-4-303.5; the Connecticut False Claims Act for Medicaid Assistance Programs, Conn. Gen. Stat. § 17b-301(a); the Florida False Claims Act, Fla. Stat. § 68.081; the Illinois Whistleblower Reward and Protection Act, 740 Ill. Comp. Stat. Ann. 175/1; the Louisiana Medical Assistance Programs Integrity Law, La. Stat. Ann. § 46.437.1; the Massachusetts False Claims Act, Mass. Gen. Laws § 5A; the New Jersey False Claims Act, N.J. Stat. Ann. § 2A:32C-1; the New York False Claims Act, N.Y.

---

disposed of the motions, the Clerk of Court is **DIRECTED** to **LIFT THE STAY** in this case.
[3] The Court will not accept any amended complaint that incorporates by reference any factual allegation or argument contained in an earlier filing, or offers only a piecemeal amendment. Plaintiff's amended complaint should be a stand-alone filing that independently contains all the factual allegations necessary.

3

State. Fin. Law. § 187; the North Carolina False Claims Act, N.C. Gen. Stat. § 108A-70-10; the Texas Medicaid Fraud Prevention Act, Tex. Hum. Res. Code. Ann. § 36.001; the Virginia Fraud Against Taxpayers Act, Va. Code. Ann. § 8.01-216.3; and the Washington State Medicaid Fraud False Claims Act, Wash Rev. Code. § 77.66.005.[4] Specifically, Relator alleges that Defendants failed to return overpayments, failed to conduct nursing visits, did not maintain adequate documentation of nursing visits, and billed Medicaid for services that should have been submitted to Medicare or private insurers.

Relator filed this case under seal in the Northern District of Georgia on September 22, 2015. (Doc. 1.) The original complaint named seven defendants. (Id.) It was later transferred to this district. On July 8, 2016, the United States and the other named Plaintiff States notified the Court of their decision not to intervene in this action. (Doc. 23.) The seal in the case was then lifted and Defendants were served with copies of the complaint. (Doc. 24.) Defendants filed a series of motions prior to answering the complaint. (Doc. 48; Doc. 50; Doc. 52; Doc. 54; Doc. 56; Doc. 57.) On November 21, 2016, the parties filed a series of stipulated dismissals (Doc. 78; Doc.

---

[4] For the purposes of Defendants' motions to dismiss, Relator's allegations set forth in her amended complaint will be taken as true. See Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009).

4

79; Doc. 80) and Relator amended her complaint (Doc. 81). The claims contained in the amended complaint are against only two Defendants, PSA Georgia and Pediatric Home Nursing Services, Inc. (hereinafter the "Defendants"). (Id.) It is the amended complaint that forms the basis for this order.

The remaining Defendants are healthcare providers that work with mentally fragile and chronically ill infants and children. (Doc. 81 at 6.) In this capacity, they often provide nursing services to these patients. (Id.) In association with this work, Defendants will submit claims to Medicare, Medicaid, and private insurers for reimbursement. (Id.) Accordingly, they are subject to both state and federal regulations in the submission of those claims. These regulations include requirements that they refund excess payments, provide certain supervision over their nursing employees, maintain a minimum level of documentation with regard to the services they provide, and seek reimbursement from Medicare and private insurers prior to seeking reimbursement from Medicaid. Relator has alleged that Defendants have committed fraud by failing to comply with each of these requirements.

This is not the first time Defendants have dealt with allegations of fraud related to the medical services they provide. In August of 2015, Defendants settled two previously

filed federal and state false claims act cases. (Id. at 18.)
That settlement covered four allegations of wrongdoing:

1. That Defendants submitted claims for services licensed practical nurses performed that were not reimbursable because Defendants had failed to document that a registered nurse conducted required monthly supervisory visits. (Id.)

2. That Defendants failed to return overpayments they had received from federally-insured health programs between January 1, 2007 and June 30, 2013. (Id. at 19.)

3. That Defendants submitted claims to state Medicaid programs for services that overstated the length of time services were rendered. (Id.)

4. That Defendants submitted claims to TRICARE/TriWest for services that overstated the length of time services were rendered. (Id.)

In connection with the settlements, Defendants entered into a Corporate Integrity Agreement ("CIA") with the Office of the Inspector General ("OIG") for the Department of Health and Human Services. (Id.) Certain details relating to the settlement, including the violations Defendants were accused of, were publicly disclosed via press releases and news articles. (Doc. 86, Attachs. 8-15.)

Around the time Defendants settled the two cases, Relator began working for Defendants as an Accounts Receivable Collector. (Doc. 81 at 5.) Her term of employment with Defendants lasted less than three months and she filed her initial complaint in this case after being employed for less than two months. (Id.) However, Relator believes that she found

evidence of continued Medicare and Medicaid fraud during the brief time she was employed with Defendants.

Relator's amended complaint consists of thirty-two counts for various violations of federal and state Medicare and Medicaid laws. (Id. at 74-112.) These counts are based on seven claims. First, Relator alleges that from December 2014 through October 15, 2015, Defendants concealed and failed to promptly report and return overpayments to the Medicaid and TRICARE programs in California, Colorado, Connecticut, Florida, Georgia, Illinois, Louisiana, Massachusetts, New Jersey, New York, North Carolina, Pennsylvania, South Carolina, Texas, Virginia, and Washington. (Id. at 26.) Federal and state laws require that entities like Defendants identify and return overpayments within a certain period of time. (Id. at 30.) Relator discovered the alleged overpayments when she generated a report called the Aging Accounts Receivable Report ("AR Report") in her capacity as an Accounts Receivable ("AR") collector. (Id. at 34-35.) Upon review of the report, Relator found several claims for which overpayments had been made. Because Defendants had received excess compensation for their services, they were required refund that excess. (Id. at 36.) However, Relator alleges that no such refunds were made. (Id.) Relator identified approximately $613,949.46 in overpayments that she alleges Defendants should have returned. (Id.)

In addition to the general allegation of withheld refunds, Relator provides further detail as to the method in which Defendants retained these overpayments. She alleges that Defendants placed overpayments in an account called the "Unapplied Cash Report." (Id. at 38.) Relator alleges that Defendants used the Unapplied Cash account to hide overpayments that should have been returned. (Id.) Relator brought her concerns regarding these overpayments to the attention of Patrick Cunningham—Defendants' Chief Compliance Officer—and Doddie Gartman Sutton. (Id. at 36.) To Relator's knowledge, no action was taken either to identify or return these alleged overpayments. (Id. at 40.) In addition, Relator contends that Defendants failed to disclose these reports to OIG auditors, failed to self-report these overpayments and unapplied cash, submitted false certification attesting that they were in compliance with the CIA, and failed to conduct an investigation regarding the alleged overpayments. (Id. at 39-40.) In that capacity, Relator also alleges that Defendants violated the CIA. (Id. at 33.)

In her second claim, Relator alleges that Defendants failed to ensure that registered nurses conducted required supervisory visits. (Id. at 41.) Federal law requires these visits for any patient receiving home health services. 42 C.F.R. § 484.36 (2017). Moreover, these visits should be conducted regardless of

whether the patient is receiving services from a home health aide or a licensed practical nurse. (Doc. 81 at 43.) Relator alleges that Defendants failed to conduct these required visits beginning in 2009 in Colorado, Illinois, Louisiana, New Jersey, New York, North Carolina, Pennsylvania, and Virginia and in Georgia since August 2011. (Id. at 41.) Relator claims that in the documents she examined during the course of her work, at least sixty-eight patients lacked nurse supervisory notes. (Id. at 45.)

In Relator's third claim, she states that since at least 2009, Defendants' nursing notes do not meet minimum documentation requirements in California, Colorado, Connecticut, Florida, Georgia, Illinois, Louisiana, Massachusetts, North Carolina, New Jersey, New York, Pennsylvania, Texas, Virginia, and Washington. (Id. at 47.) As part of her job, Relator identified denied claims and reviewed the documentation to determine whether all of the billing requirements had been fulfilled. (Id. at 49.) In the course of this review, Relator identified several patients whose records did not include sufficient detail in the nursing notes. (Id. at 50-51.) Specifically, Relator alleges that many of the nursing notes—which should have contained detailed descriptions of the services rendered—lacked accurate reports and did not contain signatures. (Id.) Relator alleges that, despite these incomplete

notes, Defendants submitted claims knowing that they did not comport with state and federal regulations. (Id. at 51.)

Relator's fourth claim also deals with deficiencies in nurse documentation. (Id. at 52.) Specifically, Relator asserts that during her review of denied claims, she was unable to locate required nursing notes for several patients residing in California, Colorado, Connecticut, Florida, Illinois, Louisiana, Massachusetts, North Carolina, New Jersey, New York, Pennsylvania, Texas, Virginia, and Washington beginning January 1, 2009 and in Georgia since 2012. (Id. at 52.) Relator claims that after reviewing nursing notes in Defendants' Intranet and Image Freeway system, she discovered that many patients completely lacked nurses' notes. (Id. at 53-54.) Despite the absence of these notes, Relator alleges that Defendants billed Medicare and Medicaid for these patients in violation of regulations. (Id. at 55.)

Relator's fifth claim deals with a fraudulent billing scheme in California, Colorado, Connecticut, Georgia, Louisiana, Massachusetts, New Jersey, North Carolina, Pennsylvania, Texas, Virginia, and Washington since at least March 1, 2014. (Id. at 56.) Relator discovered this alleged fraud when she reviewed rejected Medicare claims in several states in her capacity as a high dollar collector. (Id. at 60-61.) Relator states that in her review of rejected Medicare claims, she learned that

10

Medicaid had paid out many of the rejected Medicare claims. (Id. at 62.) Based on her review, Relator believes that Defendants were submitting to Medicare bills for private duty nursing for the sole purpose of obtaining a denial.[5] (Id. at 63.) Upon receiving the rejection, Defendants would then bill Medicaid for skilled nursing, a service that Medicare had not considered when rejecting the previous claims. (Id.) Relator also points to several patients for whom Defendants submitted claims to Medicaid even though Medicare was the primary insurer. (Id. at 64.) She alleges that, as a result, Medicare never even considered these patients' claims. (Id. at 66.) In essence, Relator claims that Defendants were billing Medicaid for services that Medicare had not considered. Because Medicaid is a payer of last resort, Defendants were obligated to submit all claims for consideration to Medicare before submitting them to Medicaid. (Id. at 62.) Relator brought these concerns to the attention of management. (Id. at 65-66.) However, none of the information provided during this meeting was sufficient to alleviate her concerns. (Id.)

In Relator's sixth claim, she sets forth a variation of the claim described above. (Id. at 67.) Specifically, Relator claims

---

[5] Relator initially claimed that the denial occurred because Defendants were not Medicare certified or eligible. (Doc. 81 at 63.) However, Relator appears to have withdrawn this assertion. (Doc. 102 at 24.)

that Defendants submitted claims to commercial insurance companies using one procedure code, which were denied and then Medicaid for payment in full using other procedure codes the commercial insurance companies had not considered. (Id.) According to Relator, this scheme occurred in Connecticut, Florida, Georgia, Massachusetts, North Carolina, New Jersey, Pennsylvania, Texas, Virginia, and Washington. (Id.) As in claim five, Relator asserts that Defendants engaged in a bait and switch scheme. Relator claims that Defendants used one inaccurate billing code for nursing care when submitting claims for private insurance. (Id. at 66-67.) Relator alleges that Defendants then submitted claims to Medicaid using a different code, knowing that the primary commercial insurance had not considered that code. (Id. at 67-68.)

In Relator's seventh claim, she alleges that PSA failed to comply with state and federal rules for participation in state Medicaid Programs. (Id. at 70.) Specifically, Relator claims that Defendants were not Medicare certified. (Id.) However, Relator has withdrawn this claim, so the Court will provide no further detail. (Doc. 102 at 3.)

## ANALYSIS

### I. PARTY DISMISSALS

Prior to filing the amended complaint in this case, Plaintiff filed stipulations dismissing Defendants Pediatric

12

Healthcare, Inc.[6] and J.H. Whitney Capital Partners, LLC with prejudice (Doc. 78; Doc. 79); and dismissing Defendants Pediatric Services of America, Inc., a Delaware Corporation; Pediatric Services Holding Corporation; and Portfolio Logic, LLC without prejudice (Doc. 80). The United States and the named Plaintiff States have advised the Court (Doc. 100) that they approve of the dismissal of these parties so long as the dismissal of Defendants Pediatric Healthcare, Inc. and J.H. Whitney Capital Partners, LLC is without prejudice as to the United States and other named Plaintiff States. See 31 U.S.C. § 3730(b)(1). The Court has reviewed the settlement terms, if any (Doc. 92; Doc. 93; Doc. 94), and also consents to dismissal. See 31 U.S.C. § 3730(b)(1). Accordingly, Defendants Pediatric Healthcare, Inc. and J.H. Whitney Capital Partners, LLC, are **DISMISSED WITH PREJUDICE** as to the Relator and **WITHOUT PREJUDICE** as to the United States and other named Plaintiff States. Defendants Pediatric Services of America, Inc., a Delaware Corporation; Pediatric Services Holding Corporation; and Portfolio Logic, LLC are **DISMISSED WITHOUT PREJUDICE.**

---

[6] Pediatric Healthcare, Inc. did not answer the complaint or file a motion for summary judgment. Accordingly, Defendant Pediatric Healthcare, Inc. is dismissed pursuant to Fed. R. Civ. Pro. 41(a)(1)(A)(i).

## II. PUBLIC DISCLOSURE BAR

Defendants have moved for dismissal of two claims pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Specifically, Defendants allege that two of Relator's claims should be dismissed because they had been publicly disclosed prior to the initiation of this suit. (Doc. 85.) Defendants also request that the Court take judicial notice of several publicly available documents when considering their motion. (Doc. 89.) Relator has not objected to the introduction of these documents.

The law governing whether Relator may bring claims that have been publicly disclosed underwent some changes pursuant to the Patient Protection and Affordable Care Act ("PPACA"). Prior to the passage of that law, challenges based on the FCA's public disclosure bar were considered jurisdictional and were brought pursuant to Rule 12(b)(1). See, e.g., Rockwell Int'l Corp. v. United States, 549 U.S. 457, 467 (2007) (holding that § 3730(e)(4) is jurisdictional). The Eleventh Circuit recognized that a motion to dismiss pursuant to Rule 12(b)(1) may be based on either a facial or factual challenge to the complaint. See McElmurray v. Consol. Gov't of Augusta-Richmond Cnty., 501 F.3d 1244, 1251 (11th Cir. 2007). A factual challenge is made irrespective of the pleadings and the Court may consider testimony and other evidence to determine its potential jurisdiction. Id. A facial challenge, on the other hand, affords

14

a plaintiff safeguards similar to those accompanying a Rule 12(b)(6) motion to dismiss for failure to state a claim. McElmurray, 501 F.3d at 1251. That is, the Court will consider as true the factual allegations contained in a plaintiff's complaint. Id. Because Defendants' motion was made prior to discovery, the Court construes it as a facial challenge to subject matter jurisdiction. As a result, to the extent that Relator's claims are based on activity that occurred prior to the passage of the PPACA, the Court may consider the publicly available documents Defendants have presented.

After the passage of the PPACA, the public disclosure rule is no longer considered a jurisdictional bar and the Court applies a Rule 12(b)(6) standard, rather than a Rule 12(b)(1) standard. See United States ex rel. Osheroff v. Humana, Inc., 776 F.3d 805, 810 (11th Cir. 2015). In considering such a motion, however, the Court is entitled to take judicial notice of public documents. See Universal Express, Inc. v. United States Sec. & Exch. Comm'n, 177 F. App'x 52, 53 ("A district court may take judicial notice of certain facts without converting a motion to dismiss into a motion for summary judgment."). Defendants have attached several public documents and records that they wish the Court to consider when ruling on their motions to dismiss. (Doc. 89, Attachs. 1-22.) Because Rule 12(b)(1) does not restrict the Court's ability to review

additional documentation and Defendants' documents are public records, the Court may consider them in ruling on Defendants' motions to dismiss. As a result, Defendants' Motion for Judicial Notice (Doc. 89) is **GRANTED**.

A. Standard of Review

Prior to the passage of the PPACA, the public disclosure bar stated the following:

> No court shall have jurisdiction over an [FCA qui tam action] based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless . . . the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(A) (2008). Courts applied a three step inquiry to determine whether the public disclosure bar applied: "(1) have the allegations made by the [relator] been publicly disclosed; (2) if so, is the disclosed information the basis of the [relator's] suit; (3) if yes, is [relator] an 'original source' of that information." McElmurray, 501 F.3d at 1252 (quoting Battle v. Bd. of Regents, 468 F.3d 755, 762 (11th Cir. 2006)). Prior to the PPACA, the FCA defined "original source" as "an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action." 31 U.S.C. § 3730(e)(4)(B)(2008).

The current language of the FCA's public disclosure bar reads as follows:

> The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party; in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C. 3730(e)(4)(A). The three part test in the Eleventh Circuit remains relatively the same under the new version of the public disclosure bar. However, rather than evaluating whether the disclosed information is the "basis" of the suit, under the new standard the Court asks if "the allegations in the [amended] complaint are 'substantially the same' as . . . allegations or transactions contained in public disclosures." Osheroff, 776 F.3d at 812 (quoting 31 U.S.C. § 3730(e)(4)). The post-PPACA version of an "original source" is an individual who "has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section." 31 U.S.C. 3730(e)(4)(B). In any event, the Court's decision is the same regardless of

which version of the public disclosure bar is applicable to Relator's claims.[7]

## B. Relator's First and Second Claims

### 1. Were the claims publicly disclosed?

Defendants assert, and Relator does not contest, that two of Relator's claims—claims one and two—were previously publicly disclosed. (Doc. 101 at 8.) Specifically, Defendants argue that the information forming the foundation of Relator's first claim was disclosed in United States ex rel. McCray v. Pediatric Servs. of Am., Case No. 4:13-127 (S.D. Ga. 2013), and that the information forming the foundation of Relator's second claim was disclosed in United States ex rel. Odumosu v. Pediatric Servs. of Am. Healthcare, Case No. 1:11-1007 (N.D. Ga. 2011). (Doc. 86 at 5.) In McCray, the relator alleged that Defendants failed to disclose and refund overpayments in Georgia, California, Colorado, Connecticut, Florida, Illinois, Louisiana, Massachusetts, New Jersey, New York, North Carolina, Texas, Virginia, and Washington. (Doc. 86 at 5; Doc. 89, Attach. 2 at 13.) In Odumosu, the relator alleged that Defendant PSA Georgia failed to comply with requirements that registered nurses engage

---

[7] Relator "agrees to seek recovery only from July 1, 2013 onward for Claim 1" (Doc. 101 at 4) in an apparent attempt to avoid the application of the original public disclosure bar. However, Relator has neither formally moved to dismiss those elements of her complaint nor moved to amend. Accordingly, the Court addresses all time periods alleged in Relators amended complaint.

18

in monthly supervisory visits. (Doc. 86 at 5.) The United States intervened in both cases and they were dismissed in 2016 following settlements. Prior to filing of this case, the United States Department of Justice issued a press release detailing the settlements and stating that PSA Georgia and other entities "(1) failed to disclose and return overpayments that it received from federal health care programs such as Medicare and Medicaid [and] (2) submitted claims under the Georgia Pediatric Program for home nursing care without documenting the requisite monthly supervisory visits by a registered nurse." (Doc. 86, Attach. 8 at 2-3.) State Attorneys General also issued press releases, and various news sources covered the settlements. (Doc. 86, Attachs. 9-15.) Based on the press releases and media coverage, the Court agrees that the facts forming the basis for Relator's first and second claims were publicly disclosed.

### 2. Are Relator's claims substantially the same or based upon previously disclosed information?

While acknowledging the existence of the Odumosu and McCray actions (Doc. 101 at 9), Relator argues that her amended complaint is not based on the same allegations or transactions (id. at 8). As to claim one, Relator argues that she has identified many new facts that were not part of the prior settlement. (Id. at 9.) She also notes that the activity alleged in her amended complaint occurred after the time period of those

19

settlements. (Id.) Moreover, claim one sets forth a new overpayment scheme—Defendants used the unapplied cash fund to improperly retain overpayments. (Id.) As to claim two, Relator alleges that the prior settlement addressed conduct that was limited to billing for licensed practical nurse services without documenting the supervisory nurse visits. (Id. at 10.) Relator also alleges that her amended complaint is based on failure to conduct supervisory nurse visits for home health aides and licensed practical nurses ("LPNs"). (Id.) As in claim one, Relator also argues that the time and geographical scope of her amended complaint in this case vastly exceeds the prior cases. (Id.)

The Eleventh Circuit has explained that in answering whether a relator's claims are based upon previously disclosed claims, a Court should determine whether Relator's claims are based "in any part on . . . publicly disclosed information." Osheroff, 776 F.3d at 814 (citing Battle, 468 F.3d at 762). This determination, along with a determination of whether the claims are substantially the same, has been described as a " 'quick trigger to get to the more exacting original source inquiry.' " Id. (quoting Cooper v. Blue Cross & Blue Shield of Fla. Inc., 19 F.3d 562, 568 n.10 (11th Cir. 1994)). Considering that this standard is not particularly exacting, the Court concludes that

Relator's first and second claims are based upon or substantially the same as previously disclosed claims.

As to claim one, Relator alleges that Defendants have failed to return overpayments. (Doc. 81 at 26.) This allegation is factually similar to the allegation disclosed in the McCray complaint and subsequent settlement. Relator alleges that her claim is not based upon or substantially similar to the prior case because she points to an additional fund as a location for holding overpayments. (Doc. 101 at 9.) However, the existence of the additional fund merely offers greater detail as to how Defendants withheld refunds. Merely providing additional detail is simply not enough. See United States ex rel. Winkelman v. CVS Caremark Corp., 827 F.3d 201, 210 (1st Cir. 2016) ("It follows logically, we think, that a complaint that targets a scheme previously revealed through public disclosures is barred even if it offers greater detail about the underlying conduct." (citing United States ex rel. Poteet v. Bahler Med., Inc., 619 F.3d 104, 115 (1st Cir. 2010))). In fact, the McCray complaint specifically notes that Defendants were "creating hidden secret subaccounts away from billing staff and auditors," undercutting Relator's allegations that she is alleging an entire new scheme. (Doc. 89, Attach. 2 at 31.) Relator has merely formally identified a new account, rather than alleged an entire new scheme. As a result, not only are the allegations in Relator's

21

amended complaint based on previously disclosed information, they are also substantially the same.

As to claim two, the difference between failing to document and failing to perform supervisory nurse visits is in all practicality a matter of semantics. Likewise, there is little difference in failing to conduct supervisory visits of both LPNs and home health aides as opposed to failing to supervise only one. The fact that Defendants were not conducting required supervisory visits was already known and disclosed, all Relator alleges is a few more details. See United States ex. rel. Bogina v. Medline Indus., Inc., 809 F.3d 365, 370 (7th Cir. 2016) (noting that relator "is not allowed to proceed independently if he merely 'adds details' to what is already known in outline." (quoting United States ex rel. Goldberg v. Rush Univ. Med. Ctr., 680 F.3d 933, 934 (7th Cir. 2012))).

Finally, Relator's argument as to the timing of the alleged activities and geographical scope for both claims are insufficient to save her amended complaint. See United States ex rel. Boothe v. Sun Healthcare Grp., Inc., 496 F.3d 1169, 1174 (10th Cir. 2007) ("[W]e reject the contention that a 'time, place, and manner' distinction is sufficient to escape the force of the public disclosure bar.") see also Jacobs v. Bank of Am. Corp, 2017 WL 2361943, *6 (S.D. Fla. 2017) (unpublished) (rejecting claims based on conduct occurring after consent

22

judgment "as the crux of Plaintiff's claims were already disclosed" by a web article). The Court notes that this second second prong of the public disclosure bar test is a "quick trigger." Osheroff, 776 F.3d at 814. It—unlike the third prong— is not an exacting inquiry. Id. As a result, the "significant overlap" between Relator's allegations and the previously disclosed allegations are sufficient to conclude that Relator's claims are substantially the same or based upon previously disclosed conduct. Id.

### 3. Is Relator an original source?

Having determined that Relator's claims are substantially similar or based upon previously disclosed information, the Court must determine if Relator is an "original source." "Under the prior version of § 3730, the [relator's] knowledge must have been direct and independent for the [relator] to qualify as an original source." Osheroff, 776 F.3d at 814 (citing 31 U.S.C. § 3730(e)(4)(B)). The amended statute states that an original source "is someone who has 'knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions.' " Id. (quoting 31 U.S.C. § 3730(e)(4)(B)).

Relator alleges that she has independent and direct knowledge of Defendants' fraudulent billing from her work as an Account's Receivable Collector. (Doc. 101 at 15-16.) She also notes that she has considerable knowledge and experience in the

23

medical billing and collections industry. (Id. at 16.) She argues that she gained knowledge of the activities involved in this case by "doing her job at PSA, including her tasks of reviewing credit balances and, when applicable, submitting refund requests to another department within PSA." (Id. at 16.) She also generated reports that included information on "services rendered, total hours worked, a running total of the billed charges, any payments received, and the outstanding balance owed." (Id. at 17.)

In determining whether Relator is an "original source," the Court looks to the Eleventh Circuit's decision in United States ex rel. Saldivar v. Fresenius Med. Care Holdings, Inc., 841 F.3d 927 (2016). Applying the pre-PPACA language of the FCA, the Eleventh Circuit made it clear that a relator is not an original source in a FCA case when she lacks direct and independent knowledge of the actual improper billing. Id. at 934-35. In this case, Relator lacks firsthand knowledge of the billing. Relator has not submitted documentation of any billed claims, nor has she alleged that she had access to bills while employed by Defendants. In fact, she acknowledges that any requests for billing or overpayment had to be submitted to an entirely separate department. Absent actual knowledge of the inappropriate billing, it is difficult for the Court to determine that she is an original source.

Relator's allegations of her experiences in the healthcare industry do not overcome this failing. It may be true that Relator has worked in the healthcare industry and is knowledgeable about billing practices. But Relator's background in billing is not the answer to the question the Court asks here. In fact, a relator's knowledge of "background" information is "insufficient to grant original source status." Osheroff, 776 F.3d at 815.

Finally, the information Relator provides is not material. Generally, an amended complaint is not material where the previous public disclosures already revealed "the essential elements comprising the fraudulent transaction . . . so as to raise a reasonable inference of fraud." United States ex rel. Rabushka v. Crane Co., 40 F.3d 1509, 1514 (8th Cir. 1994); accord Osheroff, 776 F.3d at 815. In this case, the previous lawsuits clearly informed the Government that Defendants were failing to repay overpayments and were not conducting adequate supervisory nurse visits. Accordingly, the essential elements of Relator's amended complaint have already been disclosed in the McCray and Odumoso cases. As a result, Defendants' Motion to Dismiss based on the public disclosure bar is **GRANTED**, and Relator's first and second claims are **DISMISSED**.

## III. Motion to Dismiss

### A. Standard

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.' " Id. (quoting Twombly, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " Id. (quoting Twombly, 550 U.S. at 557) (alteration in original).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Id. (quoting Twombly, 550 U.S. at 570). For a claim to have facial plausibility, the plaintiff must plead factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1261 (11th Cir. 2009) (quotations omitted) (quoting Iqbal, 556 U.S. at 678). Plausibility does not

require probability, "but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " Id. (quoting Twombly, 550 U.S. at 557). Additionally, a complaint is sufficient only if it gives "fair notice of what the . . . claim is and the grounds upon which it rests." Sinaltrainal, 578 F.3d at 1268 (quotations omitted) (quoting Twombly, 550 U.S. at 555).

When the Court considers a motion to dismiss, it accepts the well-pleaded facts in the complaint as true. Sinaltrainal, 578 F.3d 1252 at 1260. However, this Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678. Moreover, "unwarranted deductions of fact in a complaint are not admitted as true for the purpose of testing the sufficiency of [plaintiff's] allegations." Sinaltrainal, 578 F.3d at 1268 (citing Aldana v. Del Monte Fresh Produce, N.A., Inc., 416 F.3d 1242, 1248 (11th Cir. 2005)). That is, "[t]he rule 'does not impose a probability requirement at the pleading stage,' but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Watts v. Fla.

Int'l Univ., 495 F.3d 1289, 1295-96 (11th Cir. 2007) (quoting Twombly, 550 U.S. at 545).

In addition to complying with the requirements of Rule 8, the heightened pleading standard of Rule 9(b) also applies to causes of actions brought under the FCA. Hopper v. Solvay Pharm., Inc., 588 F.3d 1318, 1324 (11th Cir. 2009). Rule 9(b) states that "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Despite the heightened standard, however, the purpose of Rule 9(b) is that a complaint must provide the defendant with "enough information to formulate a defense to the charges." United States ex rel. Clausen v. Lab. Corp. of Am., Inc., 290 F.3d 1301, 1313 n.24 (11th Cir. 2002). The Eleventh Circuit has emphasized that "[t]he application of Rule 9(b) . . . 'must not abrogate the concept of notice pleading.' " Tello v. Dean Witter Reynolds, Inc., 494 F.3d 956, 972 (11th Cir. 2007) (quoting Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001)). Furthermore, Rule 9(b)'s standard "should not be conflated with that used on a summary judgment motion." United States ex rel. Rogers v. Azmat, 2011 WL 10935176, at *3 (S.D. Ga. May 17, 2011) (unpublished).

Rule 9(b) serves to ensure that a FCA claim has "some indicia of reliability . . . to support the allegation of an actual false claim for payment being made to the Government." Clausen, 290 F.3d at 1311. This is because the FCA "does not create liability merely for a health care provider's disregard of Government regulations or improper internal policies unless, as a result of such acts, the provider knowingly asks the Government to pay amounts it does not owe." Id. (citing Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 785 (4th Cir. 1999)) As a result, an FCA complaint must plead not only the "who, what, where, when, and how of improper practices," but also the "who, what, where, when, and how of fraudulent submissions to the government." Corsello v. Lincare, Inc., 428 F.3d 1008, 1014 (11th Cir. 2005). The question of whether a complaint satisfies Rule 9(b) is decided on a case-by-case basis, but it is insufficient to provide even detailed portrayals of fraudulent schemes followed by conclusions that defendants have submitted false claims. See United States ex rel. Atkins v. McInteer, 470 F.3d 1350, 1358 (11th Cir. 2006).

B.    Relator's Claims

As an initial matter, Relator has agreed that claim seven should be dismissed. (Doc. 102 at 3.) Accordingly, Defendants' motion to dismiss as to claim seven is **GRANTED**. Likewise, the Court has also dismissed claims one and two because of the

public disclosure bar. See supra p.p. 14-25. Accordingly, the only claims remaining in Relator's amended complaint are claims three-six.

### 1. Claims three and four

Defendants allege that Relator's amended complaint does not satisfy Federal Rule of Civil Procedure 9(b) as to claims three and four. The Eleventh Circuit has stated that the FCA "does not create liability merely for a health care provider's disregard of Government regulations or improper internal policies unless, as a result of such acts, the provider knowingly asks the Government to pay amounts it does not owe." Clausen, 290 F.3d at 1311 (citing Harrison, 176 F.3d at 785). Accordingly, absent the presentment of a false claim, no actionable damage has occurred. Id. (noting that "the submission of a claim is thus not . . . a 'ministerial act,' but the sine qua non of a False Claims Act violation"). The Court of Appeals has been clear that Rule 9(b) "does not permit a False Claims Act [relator] merely to describe a private scheme in detail but then to allege simply and without any stated reason for his belief that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government." Id.; see contra United States ex rel. Matheny v. Medco Health Sols., Inc., 671 F.3d 1217, 1225 (11th Cir. 2012) (finding compliance with Rule 9(b) where "relators state exactly which documents (the annual

report of 2008), exactly which sentence and its substance . . . , who was responsible . . . , when the Certification was submitted . . . , how the statement misled the government . . . , and what the Defendants gained as a result."). Moreover, the Court is not permitted to infer from circumstances that a fraudulent claim has been submitted. Corsello, 428 F.3d at 1013. As explained above, mere awareness of billing practices is insufficient. Id. at 1014.

Relator's amended complaint alleges in claims three and four that Defendants did not comply with healthcare regulations regarding the content of nurse notes when submitting claims for reimbursement for nursing services. Generally, Defendants certify compliance with such regulations upon submitting claims. Certification may be direct or implied. In this case, by submitting claims for nursing services, Defendants were also representing that they had complied with the associated regulatory requirements. As a result, Defendants had impliedly certified that compliance.[8] Relator can recover on such a claim where "the claim does not merely request payment, but also makes specific representations about the goods or services provided; and second, the defendant's failure to disclose noncompliance

---

[8] This determination is bolstered by the fact that Relator's complaint uses the phrase "misleading half-truths," to describe claim 3. (Doc. 81 at 47.) This phrase is a direct citation from Universal Health Services, 136 S. Ct. at 2001.

with material statutory, regulatory, or contractual requirements makes those representations misleading half-truths." Universal Health Servs., Inc. v. United States, ___ U.S. ___, 136 S. Ct. 1989, 1999 (2016).

To proceed on such a claim, Relator must allege that Defendants certified compliance with regulations when submitting their claims.[9] Id. at 2001. Relator must also allege that the failure to comply with those regulations was "material" to the Government's decision to pay. Id. at 2002. "The materiality standard is demanding." Id. at 2003. The Supreme Court has indicated that "the Government's decision to expressly identify a provision as a condition of payment is relevant, but not automatically dispositive. Likewise, proof of materiality can include, but is not necessarily limited to, evidence that the defendant knows that the Government consistently refuses to pay claims in the mine run of cases based on noncompliance with the particular statutory, regulatory, or contractual requirement." Id. Accordingly, the amended complaint must allege somewhere

---

[9] Relator herself appears to be unclear whether her claims are based on an implied certification theory. (Doc. 102 at 14 (arguing "to the extent the Relator's claims are analyzed as implied certification claims . . . ")). Based on the complaint, the claim does appear to be based on that theory. However, Relator is encouraged to plead with more specificity in future so as to avoid the Court having to needlessly guess as to what type of claim Relator wishes to bring in her amended complaint.

that compliance with the rules on nursing notes was material to the Government's decision to pay.

Even assuming Relator has sufficiently alleged the submission of false claims, she still faces the problem of alleging how Defendants falsely certified their compliance with regulations. Relator does provide some information regarding the federal and state requirements that nurse's notes be complete and attached for recovery. (See e.g. Doc. 81 at 54.) However, Relator neither addresses whether the Defendants certified compliance with the regulations nor alleges why the existence of complete nursing notes is material to the Government's decision to pay a claim. While Relator is correct that the Supreme Court materiality analysis may be holistic in nature, she must do something more than simply state that compliance is material. (Doc. 102 at 14.) There must be some suggestion in the amended complaint as to why the existence of complete nursing notes was material to the Government's decision to pay a claim. Accordingly, Defendants' Motion to Dismiss as to claim three and four is **GRANTED**.

2. Claims five and six

Defendants argue that Relator's fifth and six claims do not comply with the requirements of Federal Rule of Civil Procedure 8(a) because they do not allege fraudulent conduct. (Doc. 88 at 17.) Defendants point to the fact that they are indeed Medicare

certified in each state where such a certificate is required (id. at 20), that the billing codes used to bill for private duty nursing are the codes that the Georgia Pediatric Program manual requires Defendants to use (id. at 21), and that billing for denial is a common practice (id. at 20).

The crux of Relator's allegations in claim five appears to be that Defendants deliberately billed Medicare using "S" codes, knowing that they would be denied, then billed Medicaid for the same services. (Doc. 102 at 24.) Relator argues that Defendants should have first billed Medicare using "HCPCS" codes that would have presumably allowed Medicare to pay a portion of the bill, defraying some cost from Medicaid. (Id. at 24.) However, the amended complaint is extremely unclear as to which codes were used for billing, and indeed how and when these codes were submitted to Medicare and Medicaid.

Relator acknowledges that the details in her amended complaint as to this claim are somewhat lacking. (See id. at 25 ("[T]here may be some confusion as to which codes were billed to Medicare and on what forms.").) Indeed, the Court is hard pressed to determine what billing strategy was used, how the billing actually occurred, and what billing practices Defendants should have employed. Since the amended complaint is wholly bereft of the details that would allow the Court to analyze this claim, the Court **GRANTS** Defendants' motion as to claim 5.

Like claim five, the onus of claim six is that Defendants engaged in a "bait and switch" wherein they billed private insurance for services using one code knowing it would be denied, then used a different code to bill Medicaid. (Id. at 22.) Also like in claim 5, the Court is extremely unclear which codes were used, which codes should have been used, and how that relates to fraudulent conduct. Nor does the document Relator cites to in support of her allegations aid her cause. Relator has attached part of a document that purports to show Aetna denying PSA for nursing care services for a particular patient, and part of a document showing that Medicaid then paid for respite and private duty nursing for the same patient. (Doc. 81, Attach. 18.) Unfortunately, this is simply not enough to overcome Rule 8(a). All that the attached document shows is that some services were billed to Aetna and denied, and some services were billed to Medicaid and paid. There is not enough detail to determine that the services billed to Aetna are the same as those billed to Medicaid. It may well be that Defendants were engaged in a scheme to defraud Medicaid. However, Relator's amended complaint simply does not provide the Court with sufficient information to overcome Rule 8(a). Accordingly, the Court also **GRANTS** Defendants' Motion to Dismiss as to claim six.

## CONCLUSION

For the foregoing reasons, Defendants' motions (Doc. 85; Doc. 87; Doc. 89) are **GRANTED**. However, Relator shall have **fourteen days** from the date of this order to submit an amended complaint correcting the deficiencies identified above. Relator is on **NOTICE** that failure to do so will result in dismissal of this case.

SO ORDERED this __6th__ day of September 2017.

_____
WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA